These were two separate civil actions, each action being for the recovery of damages for mental anguish alleged to have been caused by the delay and nondelivery of telegrams relating to the death of one Herndon H. Kivett. One suit was in the name of Z. T. Kivett, father of the deceased, and the other in the name of H. H. Kivett, twin brother of the deceased. By consent, the two cases were tried together.
There was evidence on the part of the plaintiffs tending to establish the following facts:
That on 23 July, 1909, the plaintiff Z. T. Kivett was living at Buie's Creek, Harnett County, North Carolina, and the plaintiff H. H. Kivett, his son, was living at Detroit, Mich., and was boarding with a Mrs. Pack, at 28 Stimson Place, and was working at the Ford Motor Company shops in that city; that at 7 o'clock A. M. on 23 July a message was delivered to the defendant at Benson, in the following words: *Page 241 
BUIE'S CREEK, N.C. 23 July, 1909.
H. H. KIVETT, Detroit, Mich., 28 Stimson Place. (299)
Herndon died this morning. Heart failure. Will bury Sunday evening. Wire if you come. Z. T. KIVETT.
That at 7:35 said message was promptly dispatched by the Benson office and was received at the office of defendant in Detroit at 7:23 A. M. (central time, being about an hour later); that about 8 o'clock the same morning this telegram was carried by a messenger boy of the defendant to 28 Stimson Place, where he was told by the sendee's landlady, Mrs. Edith M. Pack, that the sendee, H. H. Kivett, was not at home; that he was at the Ford Motor Works; that she offered to pay the charges, but was told by the messenger boy that it must be delivered personally; that the said H. H. Kivett was at work at said motor works on said day, and the telegram was not delivered to him there; that on returning to the boarding-place at 6 o'clock P. M. on the same day the telegram arrived, he was informed by his landlady that a telegram had come to the house for him during the day, and he thereupon went to the main office of the defendant company in Detroit, shortly after 6 o'clock P. M., and asked for the telegram, and was told by the defendant's agent in charge that none had come to his address during the day; that after retiring for the night, at about 12:30 the next morning the telegram was delivered to the plaintiff; that he immediately wired to his father that he could not reach home in time for the funeral, paid for both the telegrams and delivered this last one to the same messenger boy who had delivered the first; that if the telegram had been delivered at any time during the day up to 10 o'clock P. M., the plaintiff H. H. Kivett could and would have left Detroit in time to have reached his father's home in Buie's Creek before the funeral. There was also evidence tending to show that at the time the telegram was delivered at 12:30 A. M., 24 July, it was impossible for plaintiff to reach Buie's Creek in time for the funeral.
A witness for the defendant, Mary Nolan, testified that on the date of the receipt of the telegram at Detroit she was in charge of a branch office of the defendant in that city; that she handled the message in controversy and sent it to the Ford Motor Works. She did not claim that she carried the message herself, and no witness was (300) introduced who testified that he went to the motor works with the message. The plaintiff H. H. Kivett was examined as a witness, and testified that he had made the railroad connection between Detroit and Dunn once, and knew the movement of the trains. He was then asked: *Page 242 
Q. If the telegram had been delivered to you in the morning at the time Mrs. Pack, your landlady, told you it came there, or at a reasonable time thereafter at the Ford automobile shop, could or would you have gone home to the funeral?
Defendant objects.
A. I could and would have reached home.
Q. If the company had delivered the telegram to you at or about the time they brought it to the landlady the second time, at 10 o'clock, if they had delivered it to you at the Ford automobile shop, could you have gotten home?
Defendant objects; overruled; exception.
A. I could have reached home if they had delivered that telegram at any time before 9 P. M., Friday, 23 July. I could have reached home in time for my brother's funeral. I would have done it. I could have reached home at the time I inquired for it, in time for my brother's funeral.
He was also asked:
Q. When you went out West state whether or not your brother went with you? A. He did.
Q. How long did he stay with you?
Defendant objects.
A. About three years.
The defendant tendered the following issues:
1. Did the defendant negligently delay the delivery of the telegram sent to H. H. Kivett?
2. Did the defendant receive and negligently fail to transmit and deliver a telegram from Detroit, Mich., to Dunn, N.C. as alleged in the complaint of Z. T. Kivett?
3. Were the plaintiffs injured thereby?
4. What damage, if any, is the plaintiff Z. T. Kivett entitled (301) to recover as mental anguish caused by such negligence, if any there was?
5. What damage, if any, is the plaintiff H. H. Kivett entitled to recover as mental anguish caused by such negligence, if any there was?
Which his Honor refused to submit, and defendant excepted.
His Honor submitted the following issues:
1. Did the defendant negligently delay to deliver the telegram addressed to H. H. Kivett in Detroit, Mich., as alleged in the complaint?
2. If the telegram had been delivered promptly, could and would plaintiff's son, H. H. Kivett, have attended the funeral of plaintiff's son, Herndon H. Kivett?
3. What damages, if any, is the plaintiff Z. T. Kivett entitled to recover of the defendant? *Page 243 
1. Did the defendant negligently delay the telegram sent to H. H. Kivett in Detroit?
2. If the telegram had been delivered promptly, could and would plaintiff have attended the funeral of his twin brother, Herndon H. Kivett?
3. What damage, if any, is the plaintiff H. H. Kivett entitled to recover of the defendant company?
Defendant objected to the submission of the issues in both cases. Objection overruled, and defendant excepted.
The defendant tendered the following prayers for instructions:
1. That if the jury find from the evidence that the telegram as sent was directed to H. H. Kivett, at 28 Stimson Place, Detroit, Mich., that the same was promptly transmitted to Detroit and within a short time after its receipt there offered the same at the said address, the boarding-place of the plaintiff, but the plaintiff was not there, then any effort made by the defendant to deliver at another place was not called for in the contract under which the message was sent, and you should answer the first issue "No."
Refused, and defendant excepted.
2. If the jury find from the evidence that the message was (302) delivered within a reasonable time, to the Ford Motor Works, in pursuance of information furnished to the messenger boy, then the defendant has fulfilled its contract, and it was not the defendant's duty to locate plaintiff H. H. Kivett among the several employees of that company; and if you so find, you should answer the first issue "No."
Refused, and defendant excepted.
3. The plaintiffs cannot recover damages for any suffering occasioned by the death of Herndon Kivett, but, if at all, only such mental anguish as resulted directly from the inability of H. H. Kivett to get to the funeral; and the jury must be satisfied by the greater weight of the evidence that such inability to reach the funeral was caused directly by the negligence of the defendant.
Refused, and defendant excepted.
4. It was the duty of the plaintiff H. H. Kivett to use all available means to have the funeral postponed and get there if possible, before he is entitled to recover at all; and if you are not satisfied that he used his best efforts, you shouuld [should] answer the second issue "No."
Refused, and defendant excepted.
5. Mere disappointment, sorrow, or regret at not being able to reach the funeral or at not having the son at such funeral would not constitute what the law deems mental anguish; and if there is no more than this, then plaintiff can recover only nominal damages; and there is no *Page 244 
evidence in this case that either of the plaintiffs suffered more than disappointment, sorrow, or regret at the inability of H. H. Kivett to get to the funeral.
Refused, and defendant excepted.
6. The plaintiff H. H. Kivett cannot recover for any alleged nondelivery of the telegram alleged to have been sent from Detroit to Z. T. Kivett at Dunn.
Refused, and defendant excepted.
7. The plaintiff Z. T. Kivett cannot recover anything for an alleged nondelivery of the telegram claimed to have been sent from Detroit (303) to Dunn, as there is no evidence that the laws of the State of Michigan allow such recovery.
Refused, and defendant excepted.
8. If the plaintiff, by the exercise of reasonable care, could have postponed the funeral and arranged for the attendance of H. H. Kivett at the funeral, then plaintiffs could only recover nominal damages.
Refused, and defendant excepted.
His Honor charged the jury as follows:
"1. It is the duty of a telegraph company to be diligent in transmitting and delivering messages which are received by it, and any failure of this duty on its part would be negligence, and if damage results from such negligence, either to the sender or the sendee of such message, it would be actionable negligence.
2. If the message refers to a case of sickness or death of some member of the immediate family of the sender or sendee, and there be actionable negligence on the part of the defendant company to deliver it, then the law would presume mental anguish, but there would be no presumption as to the amount of damages beyond nominal damages, and it would be upon the defendant to prove by the preponderance of evidence that there was no mental anguish, and the burden would be upon the plaintiff to establish by the greater weight of the evidence the amount of damages beyond nominal damages. Mental anguish, for which a plaintiff would be entitled to recover, is not that which is due to the death, but it must be that which is caused by the negligence of the defendant. Sorrow and grief for the death of a member of the family, however, does not constitute a cause of action unless it is intensified by the negligence of the telegraph company until it becomes mental anguish, and mental anguish is a very intense mental suffering, so much so as to temporarily impart mental pain; and although the fact that the negligence of the defendant made the cause of disappointment and regret attending upon the sorrow and grief because of the act of negligence on the part of the defendant company, still, unless a greater feeling that that was produced, it would not amount to mental anguish. *Page 245 
3. The damages to be allowed for mental anguish are (304) compensatory and not exemplary, and should be limited to a satisfactory or reasonable compensation. These are psychological in their nature, and may be difficult of assessment, but still the jury should be careful to allow as damages whatever is a fair and reasonable compensation to the plaintiff for his mental anguish caused by the negligence, and no further.
4. The two cases of Z. T. Kivett against the Western Union Telegraph Company and of H. H. Kivett against the Western Union Telegraph Company are by consent of the parties being tried together. The court further instructs the jury as follows: Now, apply the principles of the law above expressed to the facts of these cases as the jury shall find them.
5. Then upon the first issue submitted in the case of Z. T. Kivett against the Western Union Telegraph Company, if the jury shall find by the greater weight of the evidence that the defendant negligently delayed to deliver the message addressed to H. H. Kivett in Detroit, as alleged in the complaint, the jury should answer the first issue "Yes." If they should not so find they should answer that issue "No"; if they should answer that issue "No," they need not go any further. And this instruction is given as to the first issue in the other case of H. H. Kivett against the Western Union Telegraph Company. But if they should answer the first issue "Yes" as to any of them, then as to both cases if so answered, or as to the one whereof the answer is "Yes," as the case may be, the jury shall proceed to consider the second issue; and upon that issue the court instructs the jury that if they shall find by the greater weight of the evidence that if the message had been delivered with reasonable promptness, H. H. Kivett could and would have reached his father's home in time to, and would have attended his brother's funeral or burial, they should answer that issue "Yes"; if they should not so find, they should answer that issue "No" in both cases; and if they should answer that issue "No," they need not go any further.
6. But if they should answer that issue "Yes," upon the third issue the court instructs the jury that they must allow nominal damages in each case, and, in addition thereto, they should allow in each case a reasonable compensation for the mental anguish which they find the respective plaintiffs suffered because of the negligence of (305) the defendant which the court has heretofore advised, so that the damages allowed for this cause should be reasonable and only in compensation for the anguish caused by the negligence of the defendant. The court charges you that in your deliberations on that subject a spirit of fairness should control. *Page 246 
After stating the case. The plaintiffs could not recover substantial damages unless they establish the fact that H. H. Kivett could and would have reached home in time for his brother's funeral, if the telegram had been promptly delivered. His evidence on this point was, therefore, material, and we do not think it is subject to the criticism of the defendant, that the witness was stating an opinion, not a fact, and that he does not show that he was familiar with the schedules of the trains. He does not use the word "schedule," but says he had made the connection between Detroit and Dunn once, and knew the movement of the trains. We think the evidence competent.
It was also competent for him to testify that his deceased brother had stayed with him, in the West, three years, as bearing upon the relationship between them.
While mental anguish will be presumed under conditions presented by this record, when the relationship is that of brothers, this does not exclude other evidence tending to prove a close association between them.
The third and fifth prayers for instructions were substantially given in the charge of the court, and we think there was no error in denying the others.
The first of these prayers, if accepted as law, would relieve the telegraph company from any duty to make inquiry for the sendee of a message when the street addresss [address] is given, further than at the place indicated by the address, and is opposed to the doctrine in Hendricks v. Tel. Co., 126 N.C. 312, where it is held that, although a (306) telegram is sent in care of another person, it is not sufficient to make inquiry at the place of business of such person, if not delivered to him.
The rule contended for, if sustained, might relieve the defendant from liability in this case, but it would result in imposing additional burdens and expense on it, because under such a rule no one would add a street address to a telegram, and the defendant would have to search a city for a sendee.
Again, there is no evidence that the defendant "offered" the message at the boarding-house. On the contrary, the keeper of the house testified that she told the messenger boy she would pay for the message, and he said it must be delivered personally, and she was not contradicted.
The second prayer could not have been given, because there was no evidence of a delivery at the motor works. The only witness on this *Page 247 
question was Mary Nolan, who was in charge of a branch office of defendant in Detroit, and who testifies to no fact except that she gave the message to a messenger boy, who was not a witness.
The fourth and eighth prayer relate to the conduct of the plaintiff, and, if containing correct statements of law, should have been directed to issues on contributory negligence, instead of to the issue of negligence.
The fact that the defendant did not tender an issue on contributory negligence is very strong evidence that it did not arise.
It would seem that if he had attempted to postpone the funeral, it would not have availed him, as he had to communicate with his father by telegraph, and he sent a telegram which was not delivered.
The court could, with propriety, have given the sixth and seventh prayers, but the refusal to do so is not error.
The plaintiffs did not seek to recover damages for failure to deliver the telegram sent from Detroit, and the charge clearly and explicitly confines the jury to the consideration of the telegram sent from Buie's Creek.
The issues submitted by the court are almost identical with (307) those which were approved in Dobson v. Tel. Co., 152 N.C. 766, and enabled the plaintiffs and the defendant to present their contentions before the jury.
"It is not material in what form issues are submitted to the jury, provided they are germane to the subject of the controversy and each party has a fair opportunity to present his version of the facts and his views of the law, so that the case, as to all parties, can be tried on the merits."Wilson v. Taylor, 154 N.C. 215..
The record does not disclose that an exception was taken to the conversation with the agent of the defendant, when the plaintiff called at the telegraph office about 6 o'clock and asked if there was a telegram for him; but in any event we think the evidence is competent, because the declarations were made in furtherance of a duty the agent was then performing for the defendant.
There was evidence of negligence, and the motion to nonsuit could not have been allowed.
No error.
Cited: Alexander v. Telegraph Co., 158 N.C. 478; Penn v. TelegraphCo., 159 N.C. 309; Miller v. Telegraph Co., 167 N.C. 316; Medlin v.Telegraph Co., 169 N.C. 505. *Page 248