MRS. BECCIA MEDLIN v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 22 September, 1915.)

**1. Telegraph—Transmission—Terminal Office—Usual Method—Negligence.**

When a telegram received for transmission and delivery is sent by the company to one of its offices, not the usual one for delivery at a certain place near by, and the delivery attempted there by phone, the measure of the company's duty to make a prompt and safe delivery is increased, and where there is evidence that by reasonable effort to deliver at its proper office the delivery would have been made in time to have avoided the injury complained of in the action, the question of defendant's negligence should be submitted to the jury.

**2. Same—Evidence—Trials—Questions for Jury.**

In an action to recover damages for mental anguish from a telegraph company for its alleged negligent failure to deliver a telegram accepted

by it for transmission and delivery,. and addressed in care of Rosemary Mills, there was evidence tending to show that it had a regular office where it customarily delivered messages at the address given, both by 'phone and messenger service; that addressee was well known and within the free delivery limits of this office, but that the defendant transmitted the message, contrary to its usage, to another town some short distance away; that its agent there attempted to deliver the message by 'phone, but made slight inquiry there to find the addressee, and then telephoned the message to another mill in the vicinity, to one of the same surname but of different given name; being subsequently informed that the addressee was not located at this mill, that she was at another mill in the vicinity, to which the message had been originally addressed, and could be communicated with, replied thereto that the message had been already delivered; and it further appearing that the sender's address had been left at the receiving point, who thereafter, upon inquiry, was informed by the company's agent that the message had probably been delivered, for, if not, a service message would have been received: *Held*, sufficient evidence to be submitted to the jury upon the question of defendant's actionable negligence in failing to deliver the message, especially as afterwards the company was informed, at the place of destination, that sendee was there and would be brought to the telephone to receive the message, and this offer was ignored.

**3. Telegraphs—Efforts to Deliver—Evidence—Negligence.**

Where a telegraph company has accepted for transmission and delivery, over its own and a telephone line, a telegram addressed care of Rosemary Mills, it is its duty to make reasonable effort to deliver the message by phone or messenger at the place specified when within its free delivery limits, if such service was required for its delivery; and under the circumstances of this case, it is held that its failure to have done so is evidence sufficient to take the case to the jury upon the question of its actionable negligence.

**4. Contributory Negligence—Pleadings—Trials—Burden of Proof.**

Contributory negligence, when relied upon as a defense, must be alleged in the answer, and the burden of proof will be on the defendant to establish it.

**5. Telegraphs—Contributory Negligence—Inaccurate Address.**

Where it appears that a telegraph company, by the exercise of the care required of it, could have delivered the message, the subject of the suit, though inadequately addressed, contributory negligence in not giving a more definite or accurate address cannot successfully be interposed as a defense, especially where no inquiry was made of the sender for a better address.

**6. Telegraphs—Messages Collect—Acceptance of Message—Evidence—Nondelivery—Prima Facie Case.**

Where a telegraph company accepts a message for transmission and delivery where the tolls have been paid, or without demanding their payment on delivery thereof, and there is evidence that the message had not been delivered, a *prima facie* case of negligence is made out in plaintiff's favor, calling upon the defendant to show matters in excuse.

**7. Telegraphs—Negligence—Instructions—Proximate Cause.**

In an action to recover damages for mental anguish for the alleged negligent delay of a telegraph company in delivering a message, thereby preventing the plaintiff from attending the funeral of her mother, an instruction by the court that the plaintiff must show the negligent failure

of the defendant in not delivering the message; that this must have prevented plaintiff from attending the funeral, and thereby have caused the mental anguish, is sufficient upon the question of proximate cause.

## 8. Instructions—Special Requests—Appeal and Error.

A refusal by the trial judge to give correct requests for special instruction is not error, if they are substantially given in the charge.

APPEAL by defendant from *Ferguson, J.,* at the Spring Term, 1915, of HALIFAX.

Plaintiff sued for damages on account of the alleged negligent failure to deliver a telegram in the following words and figures:

CHARLOTTE, 4 May, 1914.

*To Beccia Medlin, Care Mill, Rosemary, N. C.*

Come home at once. Your mother is dead, Elizabeth Edwards.
Rush.                                (Signed)    S. C. McCALL.

Elizabeth Edwards, mother of plaintiff, had died in Charlotte at 8 o'clock in the morning of 4 May, 1914, which was Monday, and the message was sent by S. C. McCall, at the instance and request of Mrs. Mary C. Jonas, sister of plaintiff. The toll for the transmission of the telegram by wire and telephone to Rosemary was prepaid for Mrs. Jonas by McCall, who was a cousin of plaintiff and Mrs. Jonas. The operator at Charlotte told him that it would cost 25 cents for message and 20 cents for telephoning it to Rosemary Mills. He gave her, the operator, the address at Charlotte, so that the answer could either be telephoned to him or Mrs. Jonas or delivered by hand. He and Mrs. Jonas lived within the defendant's free delivery limits. McCall remained at the Edwards residence all that day. No answer came, and no service message up to 11:45 p. m., about fifteen hours after message was sent, and he then called up defendant's office and inquired about message. The operator said, "Wait a minute," and he waited, and was then told that "If the message had not been delivered it would have been sent back." The copy of the message offered in evidence had these entries: "Phone 646-L, 1013 Caldwell Street." The funeral was held at 1 o'clock p. m., 5 May, 1914, and if prompt delivery of the message had been made, the plaintiff could easily have reached Charlotte at midnight of 4 May, and at the latest before the funeral. If Mrs. Jonas had heard from her sister in reply to her message, the funeral would have been postponed until her arrival. She heard of her mother's death the first time on Thursday, the 7th, at 3 p. m., by letter, and on Saturday saw a copy of the message by going to Weldon for it. She left on Saturday night train, and reached Charlotte Sunday.

Plaintiff testified: "There has been a telegraph office at Roanoke Junction ever since I have been in Rosemary. I have sent and received

32—169

messages from this (Roanoke Junction) office. It is about one-half mile from this telegraph office at Roanoke Junction to where I live. It is about one-half mile to where I was at work on 4 May, 1914. Prior to 4 May, 1914, when I received messages from the Western Union Telegraph Company's office at Roanoke Junction they were delivered to me by hand, by a young man from the office at Roanoke Junction. Prior to 4 May, 1914, I regularly received mail addressed to 'Beccia Medlin.' "

She introduced the envelopes of several letters addressed to and received by her in the name of Mrs. Medlin, Mrs. Beckie Medlin, and Mrs. Rebecca Medlin, Rosemary Mills, Roanoke Rapids, N. C., or simply Roanoke Rapids, or Rosemary Manufacturing Company, Roanoke Rapids, N. C.; the Rosemary Mills being well known in that section, Weldon and its environs. She was known among the people where she lived and with whom she associated as Mrs. Anna Rebecca Medlin, by which name she was christened, and as "Becky" Medlin, Mrs. Anne Medlin, and Mrs. Rebecca Medlin. Her husband's name is Charles W. Medlin, and they have lived in Rosemary fourteen years, and are well known there.

S. M. Thompson, who lives at Rosemary Mills, testified that he had known plaintiff as Mrs. Becky Medlin for four years. She lives near his home. He further stated that defendant delivered messages often at Rosemary Mills by its messenger boy from Roanoke Junction, and that he frequently directed him to the parties addressed; the defendant's office being a quarter or a half of a mile from his store in Rosemary, and the mill a little nearer to the office.

The operator at Charlotte testified that S. C. McCall told her at the time he filed the message that Mrs. Medlin "worked in the mills," and to address it care of "the mills." She asked him to make it fuller, but he said "care of mills" was all he could do, and this was all the information the witness could get.

The operator at Weldon, N. C., testified that he received the message on time 4 May, 1914, and called up Roanoke Rapids telephone office and asked for Rosemary Mills. Some one answered and he asked if he knew Becky Medlin, and he said, "No," she was not at the mills. He could not say whether he 'phoned the message to Rosemary Mills or not. He then called Patterson Mills, and they answered that they knew a Medlin, by name T. W. Medlin, and he gave them a copy of the message. He called Patterson Mills again in half an hour, and the lady said no copy of the message was there, and she thought it had been delivered. He also mailed a copy of the message to Mrs. Becky Medlin at Rosemary Mills in time to reach that place by the 12:07 o'clock p. m. train the same day, but he did not call up Rosemary and read the message to them; that was all he did about it. Mrs. Medlin afterwards testified that she never received the message by mail, although her husband went to the post-

office in the evening after the time when the defendant's operator said the message should have been there.

A. C. Medlin, witness for defendant, testified that he received the message from the young lady at Patterson Mills, and inquired in the mill for the addressee, and, not being able to find any one by that name, he returned the message and told them they would probably find Mrs. Medlin at Rosemary Mills, and there were some of the Medlins who lived there, but he did not know their names. He got the telephone message between 9 and 10 o'clock on Monday, 4 May, 1914. In an hour or so "he talked to the Western Union himself, and told them there were no Medlins at Patterson Mills, but there were some Medlins at Rosemary Mills," who were not related to him. On Wednesday or Thursday, the 6th or 7th day of May, he was called over the long-distance telephone by some one who wanted C. W. Medlin. He sent for him to Rosemary Mills. He came, and witness told him about the message of Monday. He said that he had not received it. Patterson town is not Rosemary, but a half or a mile away. The witness, who was called by the defendant, further testified:

"I did not tell the Western Union that the telegram had been delivered. I did not tell the Western Union that I would try to find them. I told the Western Union that probably she would find them at Rosemary."

The postmaster at Rosemary testified: That he did not recall whether or not he had received letters for Becky Medlin, but had been there only one month before 4 May, 1914. "I cannot say that these envelopes were delivered to Mrs. Medlin. I do not remember every letter delivered to her. He (C. W. Medlin) has a box at Rosemary. The defendant has an office at Roanoke Junction and received telegrams there for Rosemary and delivered them over the 'phone. I received and delivered a letter for Mrs. C. W. Medlin."

T. W. Medlin, defendant's witness, testified that he was superintendent of Rosemary Mills, and was 'phoned about the telegram, and answered that he did not know Becky Medlin, but gave them the names of I. D. and C. W. Medlin. Mrs. Medlin's name was on the pay roll as "Mrs. Medlon," or "Mrs. C. W. Medlin," not as Becky Medlin, but she was the only Mrs. Medlin on the roll. They did not tell him the nature of the message.

H. L. Grant, defendant's witness, testified that he is defendant's claim agent, and as such, about one week after 4 May, 1914, he inquired at the postoffice, of Superintendent Mullin, and a neighbor across the street, if they knew Becky Medlin, and they answered "No," but that he found her husband, C. W. Medlin.

Witnesses of defendant, in rebuttal, testified that the defendant delivered messages by hand and by 'phone from Roanoke Junction to Rosemary Mills, and that they knew C. W. Medlin, husband of plaintiff,

and that Mrs. Medlin, his wife, was the only woman of that name in the mills on 4 May, 1914. There was also evidence that no copy of the message, if ever mailed, was received by Mrs. Becky Medlin.

S. C. McCall also testified that the agent at Charlotte did not ask him for a better address.

C. O. Boyd, witness for plaintiff, testified: "I worked in a store at electrical work; am an electrician. On 4 May, 1914, I was in R. E. Shell's general mercantile store at Rosemary, N. C. The Western Union called up (the store) from Weldon, and I answered the 'phone. She said that they had a telegram for Becky Medlin and asked me if I knew her. I said, 'Yes,' and I asked her (the operator) if she wanted me to get Becky Medlin to the 'phone, and I offered to get her to the 'phone for them. She (operator) said, 'Wait a minute.' In five or ten minutes she called up and said she had delivered it to the Patterson Mills. I told her that she had delivered it to the wrong place. I have been knowing her (indicating the plaintiff) as Becky Medlin for ten or twelve years. It was a lady who called me over the telephone; said she was in the Western Union Telegraph office in Weldon. It was some time before dinner."

There was evidence tending to show severe mental anguish caused by the defendant's negligence in not delivering the telegram, and damages resulting therefrom.

The defendant tendered an issue as to contributory negligence, which the court refused to submit to the jury, and the defendant excepted. The defendant requested the court to give the following instructions to the jury:

1. Before the plaintiff is entitled to recover, she must satisfy you by the greater weight of the evidence that the facts are true as she contends they are; failing in this, she would not be entitled to recover.

2. It is not mental anguish alone which entitled the plaintiff to recover damages, however she may have suffered, but it must be coupled with the negligence of the telegraph company, and, too, that negligence must be the proximate or actual cause of the injury, as in other cases.

3. The plaintiff, before she can recover, must show to you and prove by the greater weight of the evidence that there was no negligence on her part, either directly or indirectly or in continuous sequence, contributing to or helping to bring about her alleged injury as in other cases.

4. Telegraph companies are only bound to the exercise of that measure of care and diligence which a man of ordinary prudence would use under like circumstances. They must be prompt and diligent, it is true, but to demand more of them would be to apply a rule which would result sometimes, if not in the larger majority of cases, in oppression and

gross injustice. The law will require of them their full duty, and no more.

5. You will take into full consideration the contract between the parties put in evidence by the plaintiff. You will consider the figures "25-20" on the message, which is the contract, as corroborative, or helping to prove, the defendant's contention that McCall, who sent the message, was told that it would have to be sent part of the way over a 'phone line.

6. The court instructs you that there is no evidence of delay in transmitting the message by the telegraph company.

7. If you find from the evidence the fact to be that the delay and failure to deliver happened after the message was passed to the 'phone line, then the telegraph company would not be liable, and you will answer the issue as to contributory negligence of defendant, "No."

8. If you find that the way in which the message was addressed caused, or helped to cause, the failure in the prompt delivery of the message, then you are instructed to answer the issue as to negligence, "No." In considering this view you will take into consideration that the plaintiff was called for over the 'phone from Charlotte, and not found; that no letters were received at the postoffice addressed as the message was; that a letter addressed, shortly after the message was sent, to Mrs. C. W. Medlin, was promptly received, she being the plaintiff.

9. If you find that the message was delivered at the Rosemary Mill, then the defendant company would not be liable, the message being addressed "Care of the Mill," and you will answer the issue as to negligence, "No."

10. If you come to consider damages, the law requires that you do not allow anything at all for natural grief and sorrow, for this must come to all; you can only allow for the grief or anguish which is caused directly by the negligent act of the defendant.

11. The law permits the sender of a telegram or the one to whom it is sent, where there is no reasonable effort made to deliver the telegram, and the telegraph company is guilty of negligence in not delivering the message, to recover damages, as a punishment to the company for neglecting its duty to the public.

12. If you you find the facts to be that the defendant made the efforts to deliver the message as contended for by it, then the court instructs you that in law it made a reasonably diligent effort to deliver the message, and you are instructed to answer the issue as to the negligence, "No."

13. The message being addressed to "Mrs. Beccia Medlin," the court instructs you that the word "Beccia" does not spell "Beckie," and the message was not addressed to Mrs. Beckie or Rebecca Medlin, and you will answer the issue as to negligence, "No."

These prayers will be referred to hereafter in the opinion.

The court stated the issues and contentions of the parties, and gave the following, among other, instructions to the jury:

1. The plaintiff alleges that if the message, which it is admitted was received by the defendant company, had been promptly transmitted and delivered to her, she could and would have attended the funeral of her mother in Charlotte, and that, by reason of the failure of the defendant to transmit and deliver the message she did not know of her mother's death until after she was buried, and that this caused her mental anguish.

2. The defendant contends that it did all that it reasonably could do. It received the message from the sender, McCall, and told him that it would have to be sent by 'phone, and that they undertook to deliver the message, but could not find the sendee of the message. Evidence has been offered for your consideration and you are the sole judges of the credibility of the testimony and the weight to be given it.

3. The burden of proof is on the plaintiff by the greater weight of the evidence to show the negligence of the defendant, and also the mental anguish which she suffered in consequence of that negligence. It was the duty of the defendant when it received the message to forward it promptly, it being what is called a "death message," that is, announcing the death of a near relative, and to take or make such reasonable efforts to deliver the message promptly as was reasonably necessary in order to do it, within the means which were at the command of the defendant or reasonably could be at its command. The defendant contends that the information which it received from S. C. McCall was that he did not know her address more than that it was Rosemary, N. C., and that she worked in the mill, and, in order to expedite the delivery of the message, it was written on the face of it "Care of the Mills."

4. The defendant contends that when the message was received at Weldon she called up the mill at Rosemary, and was informed that there was no such person there; that then she tried to find her at the Patterson Mills, and they thought they had accomplished all that they could do.

5. If you should find from the evidence that the defendant delivered the message or attempted to deliver the message at the mill, and that was all the information the defendants could acquire, after reasonable inquiry, then the plaintiff would not be entitled to recover.

6. If you should find that the defendant, in making an effort to discover the plaintiff, called up some person over the 'phone at Rosemary, and was informed by that person that he knew Rebecca Medlin, and that he proposed to call her to the 'phone, and the defendant, if its agent had that information, and carelessly failed to deliver the message or to have the plaintiff called to the 'phone, so as to deliver the message, that would be negligence, and the plaintiff would be entitled to recover, if you

should further find from the evidence, by its greater weight, that the failure prevented her from attending her mother's funeral.

7. If you reach the second issue you must eliminate from your consideration the grief and sorrow which the plaintiff suffered on account of the death of her mother. She had no information contained in the message which would have enabled her to reach the bedside of her mother and look on her again while she was living, and therefore she could not recover anything from the fact that her mother died without her being able to be with her or to see her.

8. You cannot give anything to punish the defendant company. This action is not to punish the defendant company because it did not deliver the message. It is a suit brought to compensate the plaintiff for mental anguish which she suffered, if any, by reason of the negligence, if any, of the defendant, and she can have compensation only for whatever mental anguish you may find she suffered which grew out of the fact alone that she failed to get the message in time to see her mother after her death and before her funeral.

9. A case of this kind is one in which the jury have no right—and this is so in all cases—to be influenced by their prejudices for or against either the plaintiff or the defendant. Those are matters which may exist outside the courthouse, but when you come into the court it is your duty to find the facts from the evidence.

10. If you find in favor of the plaintiff on the first issue, then you exercise your judgment according to the evidence and proof and find what amount of damages she is entitled to recover because of mental anguish, and that will be your answer to the second issue. If you answer the first issue "No," then you need not answer the second issue.

Upon the issues submitted to the court, the jury returned the following verdict:

1. Was the defendant guilty of negligent delay in the transmission or delivery of the message sued on, as alleged in the complaint? Answer: "Yes."

2. What damages, if any, is the plaintiff entitled to recover? Answer: "One thousand dollars."

Judgment was entered thereon, and defendant appealed.

*John L. Bridgers, of Tarboro, and A. S. Barnard, of Asheville, for appellant.*

*Knight, Peebles & Harris, and Gay & Midyette, of Jackson, for appellee.*

WALKER, J., after stating the facts as above: The evidence in this record shows a flagrant case of negligence, not only in one respect, but in several. The defendant, for a consideration, undertook to transmit and deliver this message to the sendee at Rosemary Mills, and it did neither

with that degree of care, nor with a proper regard for her rights, which the law and its express agreement exacted of it. There was negligence in the transmission of the message, as it was sent to Weldon, N. C., when both its duty and its custom required that it should have been sent to its office at Roanoke Junction, which is but a quarter or half of a mile from Rosemary Mills, and where it had both communication with the latter place by telephone and delivery messenger. That was manifestly the proper office at that end of the line to which the message should have been sent. But having selected the wrong office rather increased the measure of its duty to make a prompt and safe delivery. But just here it again failed in the exercise of ordinary care; for after making slight inquiry over the 'phone line at Rosemary, which was altogether too inadequate, defendant's operator at Weldon called up Patterson Mills, for no good reason, so far as appears, and was told that they knew "a Medlin" and "gave them a copy; think they said it was T. W. Medlin." This copy was delivered to A. C. Medlin, who, "not being the sendee or akin to her," returned it to the lady operator at Patterson Mills, after making further inquiry and search for Beckie Medlin, and told her that there was no one of that name there, and that she would probably find here at Rosemary Mills; there being some Medlins who lived there. This seemed to satisfy the operator at Weldon, simply because he had been told by some one that he or she thought it had been delivered at Patterson Mills, and notwithstanding the message from A. C. Medlin that it had not been and could not be delivered there. The effort to deliver the message was then relaxed. It was not sent to Roanoke Junction to be delivered by a messenger, if the telephone calls proved to be unavailing, and who, no doubt, by diligent search could have found Mrs. Medlin at Rosemary Mills, as there was only one woman by that name on the pay rolls, nor was any further and proper effort made to find her at the place to which the message was addressed, although, as she testified, she had received telegrams there from the Junction. They merely asked T. W. Medlin, superintendent of the mills, over the 'phone, if he knew her, and he replied that he did not, but afterwards testified that there was but one Mrs. Medlin in the mills. She had lived at Rosemary with her husband for fourteen years, and he was well known; there being only three Medlins there—C. W. Medlin and his wife, Anna Rebecca (the plaintiff), and J. D. Medlin. But if the defendant was in doubt or unable to deliver the message, its plain duty, as often decided by the Court, was to wire back to Charlotte for a better address, and it would have been forthcoming, as the sender had left both his 'phone and street address, for the very purpose, with the operator there. S. C. McCall, who had delivered the message at Charlotte to the defendant for transmission, knew the sendee well, and, of course, her sister, Mrs. Jonas, could have given a

fuller and more accurate address if one was required. It was clear negligence not to have sought this information by a service message to Charlotte. *Hendricks v. Telegraph Co.*, 126 N. C., 311; 35 S. E., 543; 78 Am. St. Rep., 658; *Hoaglin v. Telegraph Co.*, 161 N. C., 395; 77 S. E., 417; *Ellison v. Telegraph Co.*, 163 N. C., 5; 79 S. E., 277, and cases cited at page 13. But to the several acts of negligence already mentioned—namely, the failure to make adequate inquiry and search at Rosemary Mills, the incorrect delivery at Patterson Mills, to which the message was not addressed, the failure, in the beginning, to send it to Roanoke Junction, the proper station, under all circumstances, and the failure to wire back to Charlotte for a better address—there was superadded the crowning act of negligence in failing to accept the offer of C. O. Byrd to bring the sendee to the 'phone at Rosemary Mills, after he had told the operator at Weldon, in answer to his service message of inquiry, that he knew Beckie Medlin and would perform the service. In reply to this offer the operator said, "Wait a minute," and five or ten minutes thereafter, he was called over the 'phone and told that the message had been delivered at Patterson Mills. This was not only gross negligence, but it is passing strange that such an answer was given after T. W. Medlin had informed the Weldon operator that Beckie Medlin did not live at Patterson Mills and could not be found there. As Beckie Medlin did not arrive at Charlotte on the first train, inquiry was made at the office of the defendant at that place as to whether the telegram was delivered, and the inquirer was told that "if it had not been delivered, it would have been sent back." Well, it was not delivered, and why was it not sent back, if this is the rule of the company, so that the plaintiff could have been notified promptly of its nondelivery and taken steps to insure a better service?

The defendant should have made diligent inquiry and search for the sendee at the Rosemary Mills and elsewhere in Rosemary village, if she was not found at the mills. *Hendricks v. Telegraph Co.*, 126 N. C., 312; 35 S. E., 543; Am. St. Rep., 658; *Kivett v. Telegraph Co.*, 156 N. C., 296; 72 S. E., 388; *Cogdell v. Telegraph Co.*, 135 N. C., 431; 47 S. E., 490; *Hinson v. Telegraph Co.*, 132 N. C., 467; 43 S. E., 945. But it is sufficient to sustain the verdict that the defendant failed to avail itself of the offer of C. O. Byrd, for under the charge of the court the jury have evidently found that the offer was made and not accepted. In whatever light the case is viewed, there was negligence on the part of the defendant.

Defendant asked that an issue as to contributory negligence be submitted to the jury, which was not done. We discover no contributory negligence of the plaintiff in the case. The address was sufficient, if defendant had exercised even ordinary care. C. O. Byrd informed the defendant that Beckie Medlin, the addressee, was at Rosemary Mills, and

could be brought to the 'phone to receive the message, but defendant would not accept this proffer of his services. It cannot, therefore, be heard to say that the address was imperfect, when, had it not been for its negligence, if not perverseness, the telegram would have been delivered to the right person and by that name, nor can it plead contributory negligence successfully, when it appears that due diligence, if it had been used by it, would have resulted in a true delivery with the address it had. It is proper to submit such an issue where there is any evidence to support it, and it is pleaded in the answer. It is not required of the plaintiff to show that she is free from contributing fault, as contended by the defendant. That is a matter of defense, and the burden of proof is upon defendant. *Mullinax v. Telegraph Co.,* 156 N. C., 541; 72 S. E., 583. Where plaintiff proves the delivery for transmission of a prepaid message, or one accepted for transmission without demanding the toll in advance, and a nondelivery of the same, it makes out a *prima facie* case, casting the burden on the defendant of showing any matters in excuse for its failure to deliver the message. *Hoaglin v. Telegraph Co., supra,* and casses cited therein.

The defendant's counsel contended that the question of proximate cause was not properly submitted to the jury, not being necessarily involved in the two issues which the jury passed upon; but a slight reference to the charge will demonstrate that the court fully instructed the jury as to this phase of the case. It is unquestionably true that negligence alone is not actionable, unless it has proximately caused the injury, and so in this kind of case the plaintiff must prove, in order to recover, that the message was not delivered by reason of defendant's negligence or breach of duty, and that its nondelivery or delayed delivery, as the case may be, was the proximate cause of the mental anguish alleged to have been suffered. *Hocutt v. Telegraph Co.,* 147 N. C., 186; 60 S. E., 980; *Hauser v. Telegraph Co.,* 150 N. C, 558; 64 S. E., 503; *Hoaglin's case, supra.* The court instructed the jury that the negligent failure to deliver the message must have prevented plaintiff from attending the funeral of her mother, and thereby have caused her to suffer mental anguish, and that this must be shown by plaintiff before she could recover. The language was plain enough for an intelligent jury to understand what was meant.

As to the instructions requested by the defendant, those which were correct the court gave, at least substantially, in its charge, and those not given were properly refused. Whether the defendant made a reasonable effort to deliver the message was a question for the jury, and the court instructed them fully and correctly in regard to what would constitute due diligence. But the uncontroverted facts showed a clear case of negligence. Some of the prayers were not in accordance with the evidence. It is unnecessary to consider them in detail. The charge

was a fair exposition of the law applicable to the evidence, and, if anything, was liberal towards the defendant.

The case was ably and ingeniously presented to us by the defendant's counsel, and remarkably so, considering what a small margin there was upon which to base a successful defense.

There was no error committed at the trial.

No error.