## WESTERN UNION TELEGRAPH CO. v. FREELAND et al. (No. 3135.)

Court of Civil Appeals of Texas. Amarillo. Dec. 5, 1928.

Rehearing Denied Jan. 9, 1929.

Wilson & Randal and J. I. Kilpatrick, all of Lubbock, Wm. H. Flippen and John W. Miller, both of Dallas (Francis R. Stark, of New York City, of counsel), for appellant.

Bean & Klett and Robert H. Bean, all of Lubbock, for appellees.

RANDOLPH, J. This suit was filed in the county court of Lubbock county by Mrs. Freeland, joined pro forma by her husband, to recover of appellant damages for negligence in the delivery of a telegram informing her of her father's death in time for her to attend his funeral. On trial before a jury in that court, judgment was rendered for the plaintiff, and appeal has been perfected to this court.

This case has been before this court before, in an effort by the company to have the district court and this court mandamus the county judge to compel him to enter a judgment in favor of the appellant herein, upon the verdict of a jury on a former trial. Western Union Telegraph Co. v. Nordyke (Tex. Civ. App.) 4 S.W.(2d) 633.

The one controlling question on this appeal is: Was the stamping, addressing to Mrs. Freeland, and mailing of the telegram to the post office box 102, as given in the telegram, a compliance with the company's contract to deliver same to her?

The following telegram was delivered to the appellant on the day named therein: "Dallas, Texas, 10:30 A. M., October 31, 1926. Mrs. J. A. Freeland, Box 102, Lubbock, Texas. W. L. Waggoner died this morning at 9 o'clock. Estelle Waggoner."

The above telegram was received at Lubbock by the appellant company on the morning of the same day and was placed in an envelope addressed to Mrs. Freeland, Box 102, Lubbock, Tex., and was stamped and put into the post office at Lubbock. Mrs. Freeland did not receive the telegram until Tuesday night about dark. One of her sons appears to have obtained the telegram from the post office box on Tuesday evening and carried it to his mother. Mr. Freeland was out of town at the time. Mrs. Freeland then, at 7:58 p. m., Tuesday, November 2, 1926, sent the following telegram to her sister, Estelle Waggoner: "Telegram received. Be there tomorrow." This telegram did not reach Estelle Waggoner until after the burial of the father, W. L. Waggoner, and Mrs. Freeland, of course, did not arrive in Dallas in time to attend her father's funeral. Mr. and Mrs. J. A. Freeland resided at Twenty-Seventh and S streets, Lubbock, Tex., at or near the intersection of those streets. They had three children—three boys. The oldest was 25 years old and named Durwood and was working for Swift & Co. The second boy, aged 18, was named Huburne, and the third, aged 13, was named Veo. The last two were in school at Lubbock. The names and residence of Mr. and Mrs. Freeland were correctly given in the city directory. The record discloses that the Freelands had neighbors living near them. Veo Freeland testified that he went to the post office twice on Sunday to get the mail for his mother, but did not get the telegram. He did not go after the mail on Monday. Huburne went to the post office between sundown and dark Tuesday evening, and then got the telegram above described and took it to his mother. That was the first notice he had of the death of his grandfather.

Estelle Waggoner testified:

"I delivered the message to the Western Union Telegraph Company by telephone. I delivered the message to them myself. I delivered the message to the Western Union Telegraph Company at Dallas, Texas. I do not know who took said message. I gave the address of Mrs. J. A. Freeland, as Lubbock, Texas, P. O. Box 102. I did not at that time know any better address of Mrs. J. A. Freeland than P. O. Box 102, Lubbock, Texas. I have testified from memory. I offered to pay for the telegram and did pay for same. It was charged to my neighbor's telephone at my request and I have paid the bill. I paid all of it. I would have paid an additional charge covering messenger service for delivery of the message, if I had been requested or notified to do so, or that same was neces-

sary, but they did not say anything about it. I was not notified that any further charges would be necessary to get delivery of the message outside delivery limits. I did not say anything to the company about Mrs. Freeland living in or out of the free delivery limits, as I knew her address only as Box 102, Lubbock. Nothing was said whatever about where she lived or could be reached. I informed them that she could be reached through P. O. Box 102, Lubbock, Texas. I never said anything regarding what the company would have to do, or where they would have to go in order to deliver the message to Mrs. Freeland, except to give them her post office box number. I told them the address as written on the telegram and nothing else was said. The Company wrote the mail box number in the telegram as I 'phoned the message in. The number of the mail box was put in the message at my suggestion. Nothing was said about the mail box number helping the company to make delivery of the message. I just gave them the post office box number."

■■ It will be remembered that the telegram was addressed to Mrs. Freeland, Box 102, Lubbock, Tex. This was a direction to deliver the telegram to a person, not a box number. In the very nature of the transaction, notice was given of the importance of the delivery of the message to the person named therein, and it was not a direction for the delivery of same to an inanimate receiver. It is true that it has been held that, where a telegram is addressed to one person in care of another, the delivery of the telegram to the party in whose care it is sent is a compliance with the duty that the telegraph company owes under its contract. Western Union Telegraph Co. v. Young, 77 Tex. 245, 13 S. W. 985, 19 Am. St. Rep. 751. In that case the sender contracted for it to be delivered to a party who would naturally be supposed to see that it reached the hands of the one for whom it was intended. It might be true that a telegram sent to a particular residence number without being addressed to any person, but delivered to that address, would be a compliance with the contract, but it cannot be reasonably supposed that, when the telegraph company delivered this telegram to box 102, it was thereby making a personal delivery to Mrs. Freeland.

It will be seen from the evidence that the telegraph company received the message without requesting more specific directions as to its delivery. Nor was the sender requested to furnish a fee to pay for delivery outside of its delivery limits in the city of Lubbock. However, one of Mrs. Freeland's boys testified that he had seen telegraph messengers out in their neighborhood.

We cannot therefore say, as a matter of law, that the delivery of the telegram in this case was a compliance by the company with its contractual duty. The trial court properly submitted the issue, "Did the defendant, Western Union Telegraph Company, use ordinary care to deliver the death message to Mrs. Freeland?" The evidence above set forth clearly warrants the jury in their finding that the telegraph company did not exercise such care in the delivery of the message.

On the former appeal, this court held that, in the absence of a statement of facts on that hearing and of the finding of negligence by the jury, such finding not having been attacked, we would presume the evidence had established negligence. 4 S.W.(2d) 633. On that hearing, this court also held that:

"The telegraph company was not entitled to a judgment by showing that the sender agreed that it could mail the message to the addressee at Lubbock, because the sender could not furnish any more specific address, in view of the finding of the jury that the telegraph company was guilty of negligence in failing to deliver the message, and in view of the fact that the addressee lived in the city of Lubbock, and no effort was made by the company, other than to mail the message, to find the addressee or deliver the telegram to her."

We refer to the authorities cited in the last-named case in support of this opinion.

The judgment of the trial court was proper, and is here affirmed.