## A. P. RUSS v. THE WESTERN UNION TELEGRAPH CO.

(Filed 8 January, 1943.)

**1. Telephone and Telegraph Companies § 2—**

In certain cases substantial damages may be recovered for mental anguish, proximately resulting from the wrongful or negligent failure of a telegraph company to transmit correctly and deliver promptly a telegraphic message, independently of any bodily or pecuniary injury; and a sendee or addressee is permitted, under our practice, to maintain the action.

**2. Same—**

Proof or admission that the telegraph company received the message for transmission and failed to deliver it to the sendee within a reasonable time raises a *prima facie* case of negligence and imposes upon the defendant the duty of going forward with such facts as it may rely upon, if it does not care to risk an adverse verdict.

**3. Same—**

In an action for damages for failure to deliver a telegram, where the evidence showed that the telegram, announcing the death of sendee's brother and stating "burying eleven Monday," addressed to a well-known person by post office box number and town, was received at destination 5 p.m. Sunday, remained undelivered at 6:30 p.m., when it was mailed to sendee and never received by him, although he lived only a short distance from the telegraph office, a demurrer to the evidence was properly overruled.

**4. Negligence § 1a: Damages § 1a—**

Negligence is a breach of duty imposed by law, which ordinarily entitles the injured party to recover all damages proximately resulting therefrom; but, when the law prescribes a duty with a limitation of liability appendant, the injured party must take the law as he finds it, and measure his rights accordingly.

**5. Public Utilities § 2b: Telephone and Telegraph Companies § 1—**

Intrastate tariff schedules of public utility companies, providing uniform, classified services and rates, with limited liability in certain classifications at lower rates, promulgated under authority of statute, declared to be exclusive, and approved by the Utility Commission, become the legal standard, which the parties may not vary or change by agreement. The classification is a part of the rate; likewise, the limitation of liability. *Holding* valid a $500 limit on recovery against a telegraph company for failure to deliver in a reasonable time an unrepeated, intrastate "death message."

Seawell, J., concurring in part and dissenting in part.
Barnhill, J., dissenting.

Appeal by defendant from *Bone, J.,* at May Term, 1942, of Robeson.

Civil action to recover damages for alleged negligent failure to deliver a prepaid, unrepeated, intrastate telegram, sent from Elizabethtown, N. C., in words and figures as follows, to wit:

"February 1, 1942

"Mr. A. P. Russ
  P. O. Box 402
  Lumberton, N. C.
    "Papa's dead, Burying Eleven Monday.
                              J. A. Russ."

This message was filed with the defendant's agency in Elizabethtown on Sunday morning for transmission by telephone to its Lumberton office when it opened at five o'clock that afternoon. It was so transmitted. The operator sent it out by a messenger boy who was going into the Negro section, across the river, to deliver two telegrams to colored people. The boy asked at two filling stations if they knew Mr. Russ. He soon returned the message to the telegraph office. The operator called the post office and was advised by the clerk that Mr. Russ had a post office box, but the clerk did not know his home address. The husband of the operator was in the telegraph office when the message was received. He advised his wife that he did not know Mr. Russ. At 6:30 p.m. a stamp was placed on the telegram and it was dropped in the mail, and the office was closed.

The plaintiff never received the telegram. He is a white man, 67 years of age, and lived about five blocks from the telegraph office on one of the principal streets of the town. He had been a resident of Lumberton five or six years. He is a member of the Episcopal Church, votes in Lumberton and has a son who attends the Lumberton schools. He was known to the Chief of Police and to the Chief of the Fire Department, both of whom were on duty at their headquarters on that day. The Fire Department is within two blocks of the telegraph office.

The plaintiff did not learn of his brother's death until the following Tuesday, the day after the funeral. He testified to substantial damages.

The jury found that the defendant had negligently failed to deliver the message to the plaintiff, and assessed his damages at $750.00.

From judgment on the verdict, the defendant appeals, assigning errors.

*L. J. Britt and McLean & Stacy for plaintiff, appellee.*

*Francis R. Stark, Varser, McIntyre & Henry, and Junius G. Adams for defendant, appellant.*

Stacy, C. J. The first question for decision is whether the defendant's demurrer to the evidence or motion for judgment of nonsuit should

have been sustained. The trial court answered in the negative, and we cannot say there was error in the ruling.

### I. MENTAL ANGUISH AS BASIS OF RECOVERY.

The law is well settled in this jurisdiction that, in certain cases, substantial damages may be recovered for mental anguish proximately resulting from the wrongful or negligent failure of a telegraph company to transmit correctly and deliver promptly a telegraphic message, independently of any bodily or pecuniary injury. *Penn v. Tel. Co.,* 159 N. C., 306, 75 S. E., 16, 41 L. R. A. (N. S.), 223; *Young v. Tel. Co.,* 107 N. C., 370, 11 S. E., 1044, 22 Am. St. Rep., 883, 9 L. R. A., 669; 26 R. C. L., 606. Here, the sendee or addressee of the message brings the action, and alleges negligence in its delivery with resultant mental anguish. He is permitted to maintain the suit under our decisions. *Penn v. Tel. Co., supra.*

The plaintiff made out a *prima facie* case when he showed acceptance of the message by the telegraph company for delivery and failure to deliver it with reasonable diligence. *Hoaglin v. Tel. Co.,* 161 N. C., 390, 77 S. E., 417; *Medlin v. Tel. Co.,* 169 N. C., 495, 86 S. E., 366. The duty of explanation then shifted to the defendant, if it did not care to risk the chance of an adverse verdict. *Hendricks v. Tel. Co.,* 126 N. C., 304, 35 S. E., 543; *McDaniel v. R. R.,* 190 N. C., 474, 130 S. E., 208.

"Proof or admission that the company received a message for transmission and failed to deliver it to the sendee within a reasonable time, raises a *prima facie* case of negligence and imposes upon the defendant the burden of alleging and proving such facts as it may rely on in excuse." *Cogdell v. Tel. Co.,* 135 N. C., 431, 47 S. E., 490.

Whether the defendant had exercised due diligence in the instant case was for the jury. *Medlin v. Tel. Co., supra.* The telegram on its face showed that it was a death message. It was received in Lumberton at 5:00 o'clock on Sunday afternoon. The purpose of the message was to inform the sendee not only of his brother's death, but also of the hour of the funeral, "Eleven Monday." We cannot say as a matter of law that mailing the telegram was a sufficient compliance with the defendant's duty under the circumstances disclosed by the record. *Kivett v. Tel. Co.,* 156 N. C., 296, 72 S. E., 388; *Hendricks v. Tel. Co., supra; Western U. Tel. Co. v. Broesche,* 72 Tex., 654, 13 Am. St. Rep., 843.

It is true, in *Lefler v. Tel. Co.,* 131 N. C., 355, 42 S. E., 819, it was said that where a telegram is addressed to a person in care of a corporation, in that case "So. Railway Co.," delivery to an agent of the corporation would suffice to discharge the duty of the telegraph company. And there is authority for the holding that where a telegraph company receives a message addressed to a person at a designated post office box, it

performs its contract when it places the message in an envelope, correctly addressed, in the mail at the post office within a reasonable time. *Taylor v. Tel. Co.,* 136 Ky., 1, 123 S. W., 311; 62 C. J., 168. But this position would seem to be discordant with the authorities in this jurisdiction. *Kivett v. Tel. Co., supra; Hendricks v. Tel. Co., supra; Hoaglin v. Tel. Co., supra; Green v. Tel. Co.,* 136 N. C., 489, 49 S. E., 165, 67 L. R. A., 985, 103 Am. St. Rep., 955.

In the instant case, the direction was to deliver the message to A. P. Russ, not to a post office box, an inanimate receiver. *Western Union Tel. Co. v. Scarborough* (Tex. Civ. App.), 44 S. W. (2d), 751; *Western Union Tel. Co. v. Freeland* (Tex. Civ. App.), 12 S. W. (2d), 256. Nor is the case controlled by the decision in *Lefler v. Tel. Co., supra.* There, the message was sent in care of an agent who presumably would be in position to care for it or to see that it was delivered to the sendee. Here, it was apparent that by mailing the telegram late Sunday afternoon, in all probability, the sendee would not receive it in time to attend the funeral the following morning. Moreover, the sending of the telegram, rather than resorting to the postal system, was enough to indicate its importance, and the necessity of delivering it promptly. *Gibbs v. Tel. Co.,* 196 N. C., 516, 146 S. E., 209. In all likelihood, if the sender had known the message was to be mailed in Lumberton, he would have dispatched a letter rather than a telegram. "A prompt delivery was of the essence of the contract." *Western U. Tel. Co. v. Adams,* 75 Tex., 531, 12 S. W., 857, 16 Am. St. Rep., 920, 6 L. R. A., 844.

The conclusion is reached "upon consideration of all the evidence," C. S., 567, that the case was properly submitted to the jury for a determination of the issues raised by the pleadings.

## II. Limitation of Liability.

In the alternative, or failing in its motion for judgment of nonsuit, the defendant presents the question of its limited liability. This was reserved upon the hearing, and by consent, ruled upon as a matter of law. The trial court denied the defendant's claim of limited liability, and entered judgment on the verdict.

The telegram in question was written on one of defendant's regular forms, which had printed upon it, *inter alia,* the following stipulations:

1. "All messages are accepted for transmission subject to the classifications hereinafter set forth, and to the conditions and stipulations adopted for each of the respective classifications. . . .

2. "Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, in consideration whereof it is agreed . . . The Telegraph Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received

for transmission at the unrepeated rate beyond the sum of Five Hundred Dollars," etc.

These provisions, stipulations and conditions had theretofore been inserted in the defendant's "Tariff N. Car. U. C. No. 1, Schedule A-1," and approved by the North Carolina Utilities Commission, 15 September, 1941.

It is provided by C. S., 1066, that the Corporation Commission (now its successor, the Utilities Commission, ch. 134, Public Laws 1933) "shall make reasonable and just rates and charges, in intrastate traffic, and regulate the same, of and for . . . 2. The transmission and delivery of messages by any telegraph company." It is also provided, C. S., 1067, that "the rates or charges established by the Commission shall be deemed just and reasonable, and any rate or charge . . . other than those so established, shall be deemed unjust and unreasonable."

It is further provided by ch. 307, Public Laws 1933, that the term "rate" shall mean and include "every compensation, charge . . . and classification, or any of them, demanded, observed, charged or collected by any public utility, for any service . . . offered by it to the public, and any rules, regulations . . . affecting any such compensation . . . or classification." And then in section 4, "every public utility shall file with the commission . . . schedules showing all rates established by it," etc. And finally, in section 5, "No public utility shall . . . collect or receive from any person a greater or less compensation for any service rendered . . . than that prescribed in the schedules . . . then filed in the manner provided in this act, nor shall any person receive or accept any service from a public utility for a compensation greater or less than that prescribed in such schedules."

It is the contention of the defendant that the effect of this legislation on the business of telegraph companies is to place the approved intrastate tariff regulations on a parity with the approved interstate tariff regulations so far as the respective rates and limitations of liability are concerned. *Hardie v. Tel. Co.*, 190 N. C., 45, 128 S. E., 500. It is conceded that if the message in question were an interstate message, the stipulation would be valid under an amendment to the "Act to Regulate Commerce" adopted by Congress on 18 June, 1910. 36 At L., 539; *Western Union v. Esteve Bros. & Co.*, 256 U. S., 566; *Western Union v. Nester*, 309 U. S., 582; *Meadows v. Tel. Co.*, 173 N. C., 240, 91 S. E., 1009.

In the enactment of the above legislation, the General Assembly undoubtedly had in mind the establishment of uniform service by public utilities, and likewise the establishment of uniform rates for such service within the prescribed classifications. The classification is made a part of the rate, and the approval of the tariff schedule makes it the legal

standard, which the parties may not vary or change by agreement. The rate then becomes a matter of law rather than one of contract. The parties agree with respect to the transmission and delivery of the telegram and its classification. The rate is fixed by the approved uniform tariff schedule. Assent to the rate is rendered immaterial because when the rate is used, dissent is without effect. *Ita lex scripta est.* The classification is a part of the rate; likewise, the limitation of liability. "Such limitations are inherent parts of the rates themselves." *State ex rel. Western Union v. Public Service Com.,* 304 Mo., 505, 264 S. W., 669, 35 A. L. R., 328.

If uniformity is to prevail, the tariff schedule must represent the whole duty and the whole liability of the company rendering the service. *Knight v. Coach Co.,* 201 N. C., 261, 159 S. E., 311. Thus, the company is not contracting against its negligence. The law fixes the rate to be paid and the extent of the liability to be assumed. Neither party is allowed to depart from this standard of duty and measure of liability. The two are component parts of an integrated whole. The one is as sacrosanct as the other. The "rate" as the term is used in the statute with all that it implies, is withdrawn from the field of agreement. The approved tariff schedule is not subject to modification or change by the parties. It contains both the legal standard and the limitation of liability. Annotation, 35 A. L. R., 336.

Negligence is a breach of some duty imposed by law, which ordinarily entitles the injured party to recover all damages proximately resulting therefrom. *Clark v. Traction Co.,* 138 N. C., 77, 50 S. E., 518, 107 Am. St. Rep., 526; 15 Am. Jur., 593. But when the law prescribes a duty with a limitation of liability appendant, the injured party must take the law as he finds it, and measure his rights accordingly. *Lytle v. Tel. Co.,* 165 N. C., 504, 81 S. E., 759. This is the basis of the decision in *Knight v. Coach Co., supra.*

Our attention has been directed to the decisions in *Young v. Tel. Co.,* 168 N. C., 36, 84 S. E., 45; *Brown v. Tel. Co.,* 111 N. C., 187, 16 S. E., 179, and the dictum in *Hardie v. Tel. Co., supra.* It is enough to say these cases were before ch. 307, Public Laws 1933, providing for equality in service and uniformity in the rates to be charged or collected by public utilities.

It follows, therefore, from what is said above, the plaintiff's recovery should have been limited to $500.00. Judgment accordingly.

The defendant will be taxed with the cost of the record and its brief.

Modified and affirmed.

SEAWELL, J., concurring in part and dissenting in part: I concur in the view that there is sufficient evidence to support the jury's verdict.

I cannot agree that it is within the power of the Utilities Commission, under the guise of fixing rates and classifying the service to which they apply, to limit recovery in an action for personal injury sustained through negligence in nondelivery of a message.

Nowhere in the Act under which the Utilities Commission operates is any such power expressly, impliedly, or by remote inference given. It is seen as a by-product of the rate-making powers of a nonlegislative body, yet it emerges as substantive law of such vigorous quality as to repeal existing law, destroy or severely limit common law rights, and make a greater change in the laws of negligence than the Legislature itself had seen fit to make in half a century.

No one questions the power of the Commission to establish one rate for an unrepeated message and a higher rate for a repeated message, based on a reasonable classification *of the service performed.* But there the power stops: The limitation on recovery has no functional relation to the service in either case—it is just super-added. It, therefore, emerges as an independent subject with which the Utilities Commission could not deal, since it has no legislative power. Such power could not be delegated to it by the Legislature, either directly or through any device, no matter how ingenious.

The argument in the supporting cases cited in the main opinion cannot be regarded as more than specious when applied, as in some of the cited cases they are, in opposition to the public policy against agreement of the parties limiting liability for negligence resulting in personal injury. *McNeill v. R. R.,* 135 N. C., 682, 47 S. E., 765; *Young v. Tel. Co.,* 168 N. C., 36, 84 S. E., 45, and cases cited. There has been no change in the statute law pertaining to the rate-making body which could affect the authority of these cases. The opinion in chief regards the contract for the service—that is, sending the message—as an acceptance of the rate and classification, including in the classification the limitation of the liability. The validity of the limitation cannot be made, directly or indirectly, to depend upon the assent of the sender.

Many thoughtful members of the profession have never been strongly attracted to the view that damages should be recoverable for mere mental anguish ensuing upon the negligent nondelivery of a telegram. The thing is intimate, noncommercial, not easily measured by money standards, and the awards are likely to be punitive rather than compensatory; but the limitations sustained in this decision go as well to commercial transactions in which negligence may spell disaster, and I see no reason why telegraph companies should be accorded an immunity from liability which is not enjoyed by other public utilities operating under State regulation. Barring the validating effect of contractual stipulation—which is of no force here—such limitation of liability by direct action of the

Legislature would be discriminative, and I cannot see how it can be more effectual as the by-product of rate-making by a regulatory board to which the Legislature gave no more power than was necessary to the performance of the function assigned to it.

A patron of a public utility of any sort should not be required to shop about in order to buy, at a price considered by an administrative board as reasonable, security for a common law or constitutional right, still unaffected by substantive law, only to find that there is no rate offered for a message, unrepeated, repeated, or re-repeated, under which the full measure of his right may be safeguarded.

Without reflecting in any way upon the carefully considered and ably written opinion in this case, with which I am constrained to dissent, I am of the opinion that the judgment of the court below should be affirmed.

BARNHILL, J., dissenting: I am in accord with what is said in the majority opinion in respect to the limitation of liability. However, I cannot agree that the judgment should be affirmed.

The defendant, in my opinion, complied with its contract when it delivered the telegram in the post office in Lumberton, as, in effect, it was directed to do by the sender. *Lefler v. Tel. Co.,* 131 N. C., 355; *Gainey v. Tel. Co.,* 136 N. C., 262; *Hobbs v. Tel. Co.,* 206 N. C., 313; *Taylor v. Tel. Co.,* 136 Ky., 1, 123 S. W., 311; 62 C. J., 168.

The cases cited in the majority opinion are not in conflict with the decisions in the foregoing cases. In *Kivett v. Tel. Co.,* 156 N. C., 296, "there is no evidence that the defendant 'offered' the message" at the address given in the telegram. In *Hendricks v. Tel. Co.,* 126 N. C., 304, the telegram was not delivered to the party in whose care it was sent. *Hoaglin v. Tel. Co.,* 161 N. C., 390, was decided on an entirely different point. In *Green v. Tel. Co.,* 136 N. C., 489, there was an error in transmission, and defendant did not make inquiry at or deliver the message to the designated address.

If this be not the law—and the majority opinion so holds—even then, in my opinion, there was error in the admission of evidence sufficiently prejudicial to entitle defendant to a new trial.

Plaintiff tendered Hinton McLeod and Ed Glover. McLeod testified that he is a police officer and was on duty at the police station at Lumberton on February 1; that he knows plaintiff and that no inquiry was made of him. Glover testified that he is chief of the fire department of Lumberton; that he knows plaintiff; that he was on duty at the city hall on February 1; and that no inquiry was made of him.

Defendant, recognizing that it was permissible for plaintiff to offer evidence tending to show that he was generally known in Lumberton,

did not object to the first part of this testimony. It only objected to that part which tended to prove that no inquiry was made of either of these witnesses to ascertain the whereabouts of plaintiff. This part of the testimony of these two witnesses was competent only in the event that evidence of a failure to inquire of them is evidence of a negligent failure to exercise due care. If it is evidence of negligence, then it is sufficient to support the verdict. So it comes to this: We hold that a failure of the defendant to contact a particular police officer or a particular fireman of the town is sufficient evidence of negligence on the part of the defendant to support an adverse verdict.

In so holding, we establish an unsound rule and open a Pandora's box that will give no end of trouble. If the failure to make inquiry of a particular police officer or fireman is evidence of negligence, then the failure to inquire of the preachers and the doctors and the lawyers, "the merchant, the baker and the candlestick maker" constitutes a want of due care. If the defendant should have gone to a particular fireman or policeman and his failure to do so is, as a matter of law, evidence of a failure to exercise due care—then it should have gone to the registrar of elections and to the tax listers, to the sheriff and to the city clerk. When once we open the door, there is no end in sight. We do, however, place an unreasonable and burdensome duty on defendant not contemplated under the rule of due care.