State ex rel. West. Union Tel. Co. v. Public Service Comm.

VII.  In this case, too, to hold that plaintiff had made out a case for the jury, we should have to presume, without substantial evidence of the fact, that Tillotson was not only dead, but also that his death was accidental, by accidentally falling into the river, or by being feloniously thrown into the river and drowned, and thus find the two crucial and essential facts, which constitute plaintiff's cause of action, from a presumption, based upon a presumption, and pile inference upon inference, which is not admissible in such cases. [Phillips v. Ins. Co., 288 Mo. 175.]  In our opinion the judgment below is not warranted by any substantial evidence in the case, and the defendant's demurrers to the evidence should have been sustained.

*Inference upon Inference.*

The result is, the judgment appealed from should be reversed.  It is accordingly so ordered.

PER CURIAM IN BANC:—The foregoing opinion of SMALL, C., is adopted as the opinion of the Court in Banc.  *Graves, C. J.,* and *David E. Blair, Walker* and *Ragland, JJ.,* concur; *James T. Blair* and *White, JJ.,* concur in reversing the judgment, but think the cause should be remanded.  *Woodson, J.,* dissents.

---

THE STATE ex rel. WESTERN UNION TELEGRAPH COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION, J. N. KAUMANS, BOARD OF TRADE OF KANSAS CITY, MERCHANTS EXCHANGE OF ST. LOUIS et al.

In Banc, July 3, 1924.

1. **COMMON CARRIER:** Limiting Liability for Negligence by Contract: Public Service Rates: Adjustment of Liability: Prior Liquidation.  Common carriers and similar public service corporations cannot exempt themselves from liability for their negligent acts by contract; and a contract for partial exemption is no more

valid than one which attempts to effect a complete exemption; nor is a contract which attempts either a partial or complete exemption any more valid because it rests upon a consideration than it would be without a consideration, but all such contracts are void as against public policy. But a basing of rates in part on the liability involved in a given public service is not a limitation of liability, but is a mere determination in advance of the maximum amount thereof, or a liquidation of the damages, contingent upon the non-performance or negligent performance of the service, and such contracts, being an advance adjustment of the liability, are not void, or prohibited by law. The liability to be assumed by the carrier is a proper element to be considered in rate-making, so far as the carrier is concerned.

2. **TELEGRAPH COMPANY: Rates Graduated According to Liability Assumed.** The services offered to the public by telegraph companies are analogous to those rendered by common carriers, and the general principles which govern in respect to the elements that may be considered in the fixing of reasonable charges for the services of common carriers are equally applicable to such companies. In determining their rates for sending messages such companies have the right to apply the principle that their charges should bear a reasonable relation to the risk and responsibility undertaken, and to graduate their rates by the liability assumed.

3. ———: ———: ———: ———: **Difficulty of Estimating Value and Damages for Negligent Act.** The difficulty of appraising in advance the value of a message to be sent by a telegraph company, and of estimating the damages to the sender that may flow from negligent acts in transmitting and delivering it, does not defeat the right of such company to graduate the charge according to the risk incurred, for the sender is in a better position than the company to approximate both the value and the damage.

4. **TELEGRAPH RATES: Filed with Commission: Reasonable: Lawful.** Rates for the transmission of repeated, unrepeated and special-value messages wholly within this State, filed by a telegraph company with the Public Service Commission in the manner provided by law, if not found by the Commission to be unjust, unreasonable or unlawful, are lawful rates, even though they contain by reference a contract graduating the company's liability for damages according to fixed charges.

5. ———: **Reasonable Limitation of Liability by Contract: Power of Commission.** The Public Service Act confers upon the Public Service Commission the exclusive power to determine, subject to judicial review in a proper proceeding, whether the rates of a telegraph corporation for sending messages are just and reasonable,

and therefore lawful, and the power to pass upon the reasonableness and lawfulness of rates includes the power to determine the reasonableness and lawfulness of contract provisions printed on the back of messages by which the company graduates its liability for errors in transmission and delay in delivery according to the amount of the charges for the service. The approval of such rates does not have the effect of relieving the company of the consequences of its own negligence. [Distinguishing Reed v. West. Union Tel. Co., 135 Mo. 661.]

6. ———: ———: ———: **Classification.** The statute (Sec. 10496, R. S. 1919) authorizes the classification of telegraph rates into repeated, unrepeated, special-value and such other classes as are just and reasonable, and different charges for the different classes, and a telegraph corporation may classify intrastate messages, for rate purposes, into repeated, unrepeated and special-value messages, and limit its liability for error in transmission or delay in delivery for each class, according to the charge, subject to the provisions of. the Public Utilities Act and the supervisory powers of the Public Service Commission.

7. ———: ———: **Conflict with Other Statutes.** Section 10136, Revised Statutes 1919, fixing a penalty of three hundred dollars upon a telegraph company for neglect or refusal to transmit and deliver promptly a message, does not inhibit the basing of rates, to any extent, upon the amount of liability assumed. Neither does Section 10140, providing that a telegraph company shall be liable for special damages occasioned by its failure or neglect in receiving, transmitting or delivering dispatches. Neither of said sections is repugnant to the Public Service Act, which does not authorize a limitation of the company's liability for negligence, but simply authorizes an adjustment of rates according to. the liability involved or agreed upon.

8. ———: ———: **Equitable Adjustment: Notice to Public.** The, basing of charges for the sending of telegraph messages in part on the liability assumed operates equitably for both the companies and the persons who avail themselves of their service; thereby the company is permitted to exact a charge proportionate to the responsibility undertaken, and the sender is furnished a service which involves but little pecuniary consequences at rates correspondingly adjusted. The important thing is that the public be fully advised as to charges in respect to the limitations of liability on which they are made to rest, and that is fully provided for by the statutes.

Headnote 1: Carriers, 10 C. J. secs. 195, 196, 199. Headnotes 2, 3 and 7: Telegraphs and Telephones, 37 Cyc. 1619. Headnotes 4 and 5: Telegraphs and Telephones, 37 Cyc. 1630. Headnotes 6 and 8: Telegraphs and Telephones, 37 Cyc. 1688 (1926 Anno).

508    SUPREME COURT OF MISSOURI,

State ex rel. West. Union Tel. Co. v. Public Service Comm.

Appeal from Cole Circuit Court.—*Hon. H. J. Westhues,*
Judge.

REVERSED.

*Francis Raymond Stark, Joseph L. Egan, Busby, Sparrow & Patterson* and *Miller, Carmack, Winger & Reeder* for appellant.

(1) The Telegraph Company was authorized to initiate or adopt and file a reasonable schedule, or limitation of liability as a part of its schedule of rates for service in its intrastate business, subject to the power of the Public Service Commission, to regulate and prescribe a different schedule of rates and liability, if the schedule established by the Company was found to be unlawful and unreasonable. Sec. 1, par. 3, Interstate Commerce Act (24 St. L. 379, Amended 34 St. L. 584, 36 St. L. 545); Sec. 10496, R. S. 1919; Sec. 2, Interstate Commerce Act, 24 St. L. 379; Par. 1, sec. 3, Interstate Commerce Act, 24 St. L. 380; Par. 3, sec. 10496, R. S. 1919; Par. 3, sec. 10497, R. S. 1919; sec. 10502, R. S. 1919; Cultra v. Western Union Tel. Co., 44 I. C. C. Rep. 670; Postal Tel. Cable Co. v. Warren-Goodwin Lbr. Co., 251 U. S. 27; Cultra v. Western Union Tel. Co., 61 I. C. C. Rep. 541; Western Union Tel. Co. v. Esteve Bros. & Co., 41 U. S. Sup. Ct. Rep. 584. (2) The schedule of rates and liability promulgated by the Interstate Commerce Commission for interstate business and adopted and filed by the appellant on July 18, 1921, for its intrastate business, was a just and reasonable schedule and should have been approved by the Public Service Commission. Cultra. v. Western Union Tel. Co., 44 I. C. C. Rep. 670; Cultra v. Western Union Tel. Co., 61 I. C. C. Rep. 541. (3) Such parts of Sec. 10136, R. S. 1919, as provide for a penalty of $300 for failure of the Telegraph Company to diligently and promptly transmit and deliver a message, and of Sec. 10140, R. S. 1919,

as provide for special damages for failure or negligence in receiving, copying, transmitting, or delivering dispatches, were repealed by the Public Service Commission Act or supplemented by the new schedule filed by appellant on July 18, 1921. Sec. 10550, R. S. 1919; State ex rel. Mo. Pac. Ry. Co. v. Pub. Service Comm., 275 Mo. 64; State ex rel. v. Public Service Com., 259 Mo. 728. (4)    Sec. 10498, R. S. 1919, is applicable only to things expressly prohibited or required to be done by the Public Service Commission Act and has no application to a schedule of rates and liability promulgated and filed by the appellant or to a schedule of rates and liability fixed by the Commission in compliance with Public Service Commission Act.    (5)    The cases of Reed v. Western Union Tel. Co., 135 Mo. 661, and Hull v. Railroad, 208 S. W. 494, and Davis v. Western Union Tel. Co., 236 S. W. 409, are not controlling.    Sec. 10496; R. S. 1919; Davis v. Western Union Tel. Co., 236 S. W. 408; Western Union Tel. Co. v. Esteve Bros., 41 U. S. Sup. Ct. Rep. 584.    (6)    Even if the schedule printed on the back of the telegraph blank is to be considered in the nature of a contract, it is a valid contract, fixing the value of the message and should have been approved by the Commission as such.    State ex rel. Sedalia v. Pub. Serv. Comm., 275 Mo. 201; Kansas City v. Public Service Comm., 276 Mo. 539; St. Louis v. Public Service Comm., 276 Mo. 509; Jacobs v. Western Union Tel. Co., 196 Mo. App. 302-9; Harvey v. Railroad Co., 74 Mo. 538; McFadden v. Railroad Co., 92 Mo. 343; Kellerman v. Railroad, 136 Mo. 177; Hart v. Pa. Railroad Co., 112 U. S. 331; D'Utassy v. Barrett, 219 N. Y. 420; Burk v. Railroad Co., 226 N. Y. 534; Kansas City Southern Ry. v. Carl, 227 U. S. 639; Adams Express Co. v. Croninger, 226 U. S. 491; Boston & M. Railroad Co. v. Hooker, 233 U. S. 97; Western Union Tel. Co. v. Compton, 114 Ark. 193; Klotz v. Western Union Tel. Co., 175 N. W. 825; Donlon Bros. v. So. Pac. Ry., 151 Cal. 763; 4 R. C. L. pp. 787-9.

*L. H. Breuer* and *Frank E. Atwood* for Public Service Commission; *Brown Harris* for other respondents.

(1) Under statutes and court decisions a telegraph company cannot limit its liability for negligence in handling intrastate business, and a rate schedule which also seeks to limit liability is unlawful. Secs. 10136, 10140, 10498, R. S. 1919. (a) Sections 10136 and 10140 were not repealed by the Public Service Commission Act. Sec. 10550, R. S. 1919. The Public Service Commission is without power either to repeal a statute or to declare it unconstitutional. State ex rel. Railroad Co. v. Public Service Comm., 259 Mo. 704; City of Macon v. Public Service Comm., 266 Mo. 484; Reed v. Western Union Tel. Co., 135 Mo. 661; Kansas City So. Railroad v. Carl, 227 U. S. 639; Jones on Telegraph and Telephone Companies (2 Ed.) secs. 377, 379, 380, 382, 383, 400, 402; Des Arc Oil Mill v. Western Union Tel. Co., 132 Ark. 335, 6 A. L. R. 1081. (b) Mere filing of rate schedule with the Public Service Commission does not change the above rule. Hull v. Ry. Co., 200 Mo. App. 392; Thomas v. Maloney, 142 Mo. App. 193. (c) The Public Service Commission Act deals with uniformity of rates only, and has nothing to do with limitation of liability. Davis v. Western Union Tel. Co., 236 S. W. 407. Consequently, when limitation of liability is made or sought to be made an integral part of the rate schedule for intrastate business, the schedule and practices pursuant thereto become unlawful. (2) Under all the evidence the schedule and practices complained of are unreasonable and unjust. Sec. 10502, R. S. 1919; Missouri Southern Ry. Co. v. Public Service Comm., 279 Mo. 484. (3) The schedule and practices complained of being unlawful, unreasonable and unjust, appellant's assignment of error is without merit and the judgment of the circuit court should be affirmed. Sec. 10502, R. S. 1919; Missouri Southern Railway Company v. Public Service Comm., 279 Mo. 484.

RAGLAND, J.—This is an appeal from a judgment of the Cole County Circuit Court affirming an order of the Public Service Commission (hereinafter called the Commission) directing the Western Union Telegraph Company (hereinafter called the Company) to "cease and desist from delivering, distributing or furnishing to its patrons in the State of Missouri for use in handling telegraphic messages wholly within the State of Missouri, telegraph blanks or forms which contain any statement to the effect that said defendant (the Company) has or claims the right to limit its liability for mistakes or delays by it in handling telegraphic messages, wholly within the State of Missouri."

It appears that the Company, for many years, has offered the sender of messages a choice of three classes of messages: (1) unrepeated; (2) repeated; and (3) valued, with different rates for each class and with varying liability for neglect in handling them. As a condition for the transmission of a message at the lowest or unrepeated rate, its rules provided that the Company should not be liable for mistakes, delays or non-delivery beyond the amount received for sending it. That class of messages carried the lowest rate. It offered the repeated class of messages at a rate of one and one-half times the rate for the same message if unrepeated. For this additional rate it offered to assume liability to the extent of fifty times the rate paid, with a maximum liability of $50, unless a greater value was stated in writing at the time of sending the message. For the third class or valued messages, the rate charged was the repeated rate plus a surcharge of one-tenth of one percent of the valuation placed upon the message. These terms and conditions were printed on the back of the blanks furnished by the Company to be used in writing the messages to be transmitted by it, and they were so incorporated by reference into the direction given the Company by the sender over his signature as to become terms of a contract between them.

In 1910, Congress by an amendment to the Interstate Commerce Act placed the rates, charges and practices of telegraph companies in their interstate business within the regulatory power of the Interstate Commerce Commission. In May, 1921, that Commission after a hearing held that the Company's rules for limiting its liability for negligence were an integral part of the rates charged by it and that the same were unreasonable. It then prescribed, in lieu of those then in force, rules which limited the liability of the Company for the three classes of messages as follows: first class, unrepeated, not in excess of $500; second class, repeated, not in excess of $5000; third class, to the value of the message stated in writing by the sender upon payment therefor of the repeated rate plus one-tenth of one percent of the stated value in excess of $5000. Following this ruling the Company prepared a new schedule of rates for intrastate messages, making such rates the same as those prescribed by the Interstate Commerce Commission for interstate messages, and on July 18, 1921, filed it with the Commission as required by the Missouri Public Service Commission Law. Thereafter it amended the contract provisions endorsed on its message blanks to conform to its new schedule of rates, which was the same for both intrastate and interstate messages. As so amended they were as follows:

"All messages taken by this company are subject to the following terms:

"To guard against mistakes or delays, the sender of a message should order it repeated, that is telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face this is an unrepeated message and paid for as such, in consideration whereof it is agreed between the sender of the message and this Company as follows:

"1. The Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-

delivery, of any message, received for transmission at the unrepeated message rate beyond the sum of five hundred dollars, nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any message, received for transmission at the repeated message rate beyond the sum of five hundred dollars, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines, nor for errors in cipher or obscure messages.

"2. In any event the Company shall not be liable for damages for mistakes or delays in the transmission or delivery or for the non-delivery, of any message, whether caused by the negligence of its servants or otherwise, beyond the sum of five hundred dollars, at which amount each message is deemed to be valued, unless a greater value is stated in writing by the sender thereof at the time the message is tendered for transmission, and unless the repeated-message rate is paid or agreed to be paid, and the additional charge equal to one-tenth of one per cent of the amount by which such valuation shall exceed five thousand dollars."

At the time of the hearing which culminated in the order under review there was still on hand in many of the Company's offices throughout the State a supply of the old form message blanks, but as fast as these supplies were exhausted they were being replaced by the new blanks. Both forms, however, fall within the prohibition of the Commission's order.

As shown by the finding and report of the Commission, its order rests upon these conclusions: Under the laws of this State the Company cannot limit its liability for negligence by contract; the statements just referred to which it endorses on its message blanks purport to effect such a limitation and are therefore unwarranted; and such unwarranted statements not only mislead, but may be used by the Company to coerce unjust settlements of valid claims against it. These present the essential matter for review here.

304 Mo.—33.

I.   The doctrine that common carriers and similar public service corporations cannot exempt themselves from liability for negligence by contract is not peculiar to this State.  It prevails generally in the jurisdictions of this country.  A contract for partial exemption from liability for negligence is no more valid than one which attempts to effect a complete exemption.  Nor is a contract which attempts to provide either a partial or a complete exemption any more valid because it rests upon a consideration than if it was without consideration.  [Kansas City Southern Ry. Co. v. Carl, 227 U. S. 639, 650.]  All such contracts are void as against public policy.  The basing of rates in part on the liability involved in a given service is not, however, a limitation of liability; it is a mere determination in advance of the maximum amount thereof, a liquidation of the damages, contingent upon the non-performance or the negligent performance of the service.  This court in effect so held with respect to the rates of common carriers and contracts of carriage based thereon in the case of Harvey v. Railroad, 74 Mo. 538, decided as early as 1881.  And it has ever since steadily adhered to the view then expressed.  [McFadden v. Railroad, 92 Mo. 343; Kellerman v. Railroad, 136 Mo. 177, 190; George v. Railroad, 214 Mo. 551.]  That the liability assumed is a proper element to be considered in rate-making, so far as common carriers are concerned, is generally recognized.  In Kansas City Southern Ry. Co. v. Carl, supra, it was said: ''The right of the carrier to base rates upon value has been always regarded as just and reasonable.  The principle that the compensation should bear a reasonable relation to the risk and responsibility assumed is the settled rule of the common law.  Thus in Gibbon v. Paynton, 4 Burrows, 2298, it was said by Lord Mansfield (p. 2300): 'His warranty and insurance is in respect of the reward he is to receive; and the reward ought to be proportionable to the risque.'  In the leading

*Negligent Acts: Limiting Damages by Contract.*

case of Hart v. Pennsylvania Railroad, 112 U. S. 331, the right of the carrier to adjust the rate to the valuation which the shipper places upon the thing to be transported is the very basis upon which a limitation of liability in case of loss or damage is rested. This is an administrative principle in rate-making recognized as reasonable by the Interstate Commerce Commission, and is the basis upon which many tariffs filed with the Commission are made.''

Telegraph companies offer to the public services analogous to those rendered by common carriers, and the general principles which govern in respect to the elements that may be considered in the fixing of reasonable rates and charges for the one service are just as controlling as to those for the other. In determining their charges telegraph companies as well as carriers have the right to apply the principle that the compensation should bear a reasonable relation to the risk and responsibility undertaken. In other words they may graduate their rates by the liability assumed. This is necessarily implied in the rate-making power conferred upon them. [Primrose v. W. U. Tel. Co., 154 U. S. 1.]

It is argued that rates for telegraphic service cannot to any extent be based on the liability assumed, because in the very nature of the case the damages that may flow from a failure to transmit or deliver a message cannot be estimated in advance. But as has been pointed out the difficulty of appraising the value of a message when it is offered for transmission does not defeat the right of a telegraph company to make a charge for the service sought in proportion to the risk to be incurred, and the sender is in a better position than the company to know approximately the value of the thing sent and the damages that may flow from a failure to accurately transmit or promptly deliver it. [Unrepeated Message Case, 44 I. C. C. 670; Klotz v. W. U. Tel. Co., 175 N. W. (Iowa) 825.]

516     SUPREME COURT OF MISSOURI,

State ex rel. West. Union Tel. Co. v. Public Service Comm.

II. By the Public Service Commission Law telegraph corporations and their instrumentalities are placed under the supervision of the Commission. Such corporations are required to file with the Commission schedules showing the rates and charges for service of every kind over their lines between points in this State, and no change in their rates can thereafter be made, except after thirty days' notice to the Commission, unless the Commission for good cause shown dispenses with the notice. Such rates and charges must be just and reasonable, and if the Commission be of the opinion that they are in any respect unjust or unreasonable, it may determine, and by order fix, the just and reasonable rates and charges for the services specified. When filed with the Commission the rates and charges become and, until changed by the filing of a new schedule, or by order of the Commission, continue to be the lawful rates and charges, binding upon both the corporation filing them and the persons who avail themselves of its service. [Art. 5, chap. 95, R. S. 1919.]

*Lawful Rates.*

On July 18, 1921, the Company filed with the Commission, to become effective thirty days thereafter, a schedule of its rates and charges based upon the classification of repeated, unrepeated and special-value messages, which in effect graduated its basic rate by the liability assumed. These rates the Commission has not found to be unjust, unreasonable or unlawful. They are therefore lawful rates, and it necessarily follows that the limitations of liability upon which they are based are also lawful. Such limitations are inherent parts of the rates themselves. [Western Union Tel. Co. v. Esteve Bros. & Co., 41 Sup. Ct. Rep. 584.]

III. The conclusion of the Commission, that the contract provisions appearing on the back of the Company's message blanks, purporting to limit its liability, would, if given effect, operate merely to relieve the Company of the consequences of its own negligence, seems to have been based largely on the ruling of this court in Reed v. Western

*Power of Commission.*

Union Tel. Co., 135 Mo. 661, decided in 1896. That was a suit by the addressee of a telegram for damages resulting from its inaccurate transmission. The Company based its defense on the following stipulation made by it with the sender: "All messages taken by this company are subject to the following terms: To guard against mistakes or delays the sender of a message should order it *repeated;* that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery or for non-delivery of any *unrepeated* message whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same." It was held that the stipulation was unreasonable, that it was a mere device by which the consequences of the Company's own negligence were thrown upon the shoulders of its customers, thereby relieving it of all responsibility for a failure to exercise due care. That ruling is without influence in the determination of the questions presented on this record. Since it was made the Legislature has enacted the Public Service Commission Law which confers upon the Commission the exclusive power to determine, subject to judicial review in a proper proceeding, whether the rates and charges of telegraph corporations are just and reasonable, and therefore lawful. And the power to pass on the reasonableness and lawfulness of rates necessarily includes the power to determine the reasonableness and lawfulness of such limitations of liability as are integral parts of the rates. This conclusion seems to be inescapable from the standpoint of reason and logic, but if authority be needed to support it, it may be found in the rulings of the Interstate Commerce Commission and the Supreme Court of the United States with respect to provisions of the Interstate Commerce Act which have been copied almost literally into the

Missouri Public Service Commission Law. [Unrepeated Message Case, 61 I. C. C. 541, 544; Postal Tel. Cable Co. v. Warren-Godwin Co., 251 U. S. 27.] As already stated the rates and charges of the Company embodying the limitations of liability in question are, and since July 18, 1921, have been, on file with the Commission. They have never been changed or modified in any respect by the Commission and are therefore valid and binding.

Again, the Reed Case held in effect that the classification of messages for rate purposes into repeated and unrepeated was unreasonable. It was said: "Having undertaken to transmit the message, why should they not be held to a careful performance of that duty and be liable for a negligent disregard thereof? Why should they be permitted to demand an extra half toll for the faithful performance of a duty for which they have already charged a reasonable price?" Now, however, such classification is expressly authorized by the Public Service Commission Law. It provides: ". . . that messages by telegraph or telephone may be classified into day, night, repeated, unrepeated, commercial, press, government and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages." [Subd. 3, Sec. 10496, R. S. 1919.]

In passing upon an identical provision of the Interstate Commerce Act, the Interstate Commerce Commission said:

"Almost from the beginning of telegraphy in this country the basic rate has been that charged for the transmission of an unrepeated message, the rates for repeated and special-value messages being built upon it. The unrepeated rate or charge has always been made upon the condition, stated in the contract between the sender and the company, that no liability should attach to the company for errors in transmission or delays in delivery beyond the sum received for sending the message. The higher rate for repeated messages, concur-

rently maintained for many years with the unrepeated
rate, is predicated in part upon the additional service
performed, and in part upon the liability of the defend-
ant to make good any damages incurred, through error
or delay in the transmission or delivery of the message,
to the extent of fifty times the rate charged, with a max-
imum of $50.   For a long time also the defendant has
maintained still higher charges under which, upon the
payment of one-tenth of one per cent of the amount of the
assurance desired, the defendant, within the value so
placed upon the message, assumes liability to the full
extent of the loss sustained.   The fundamental difference
between the unrepeated rate and the other two classes
of rates is that under the former the sender assumes the
risk of error or delay, while under the latter the carrier
assumes the risk in part or entirely, as the case may be;
and the rules fixing the measure of the defendant's lia-
bility under those several classes of rates are essentially
a part of the rates themselves.   .   .   .

"If, as a matter of law, as the complainants con-
tend, the rate charged and collected for an unrepeated
message carries with it the same protection to the sender
or recipient and imposes upon the telegraph company
the same liability and degree of care as the rate for a re-
peated message, then the express authority by the Con-
gress to maintain classifications of repeated and unre-
peated messages, with the different rates attached there-
to, is without significance or effect; for no useful pur-
pose would have been served in authorizing the two
classifications taking different rates without recognizing
the fundamental difference between them that for years
has been well understood and maintained.   It seems
clear, therefore, that the Congress in recognizing, by the
amendment to the act above quoted, these three classes
of messages with the different charges attached, has also
recognized a distinction in the defendant's liability under
them, and has sanctioned this distinction for the future,
subject of course to the general provisions in the act re-

520    SUPREME COURT OF MISSOURI,

State ex rel. West. Union Tel. Co. v. Public Service Comm.

quiring all rates, and all rules and regulations affecting rates, to be reasonable and uniform in their application, under like circumstances, for the different kind of service offered. Such classification of its messages, with the different rates and liabilities attaching to them, having affirmative recognition in the act itself, it follows that when lawfully fixed and offered to the public they are binding upon the defendant, and upon all those who avail themselves of its services, until they have been lawfully changed." [44 I. C. C. 670, 675, 678.]

This ruling was approved by the Supreme Court in Postal Tel. Cable Co. v. Warren-Godwin Co., supra. The reasoning employed is equally applicable and equally conclusive in the construction of the like provision of the Missouri Public Service Commission Law. It follows, therefore, that telegraph corporations in this State may classify intrastate messages, for rate purposes, into repeated and unrepeated, with the assumption of a different liability for each class, subject to the other provisions of the Public Service Commission Law and the supervisory powers of the. Commission conferred by it.

IV.  In the report and the finding of the Commission there is a suggestion that Sections 10136 and 10140, Revised Statutes 1919, in some way inhibit the basing of rates for telegraphic service to any extent upon the amount of liability assumed. Counsel for the Company argue that these sections were repealed by implication by the Public Service Commission Law. The provisions of the first, so far as pertinent, are as follows:

**Other Statutes.**

"Sec. 10136. It shall be the duty of every telegraph . . . company . . . operating any . . . telegraph line in this State, to provide sufficient facilities at all its offices for the dispatch of the business of the public, to receive dispatches from and for other . . . telegraph lines and from or for any individual, and on payment or tender of their usual charges for transmitting

and delivering dispatches as established by the rules and regulations of such . . . telegraph lines, to transmit and deliver the same to designated address and to use diligence to place said dispatch in the hands of the addressee, by the most direct means available, without material alterations, promptly, and with impartiality and good faith under a penalty of three hundred dollars for every neglect or refusal so to transmit and deliver, to be recovered with costs of suit by civil action by the person or persons or company sending or desiring to send such dispatch; two-thirds of the amount recovered to be retained by the plaintiff and one-third to be paid into the county school fund of the county in which the suit was instituted."

This section, as has been held, is purely penal. It was enacted pursuant to the police power and for the purpose of compelling telegraph companies to properly discharge the duties which they owe to the public. Nothing can be found in any of its provisions or requirements that is in any way inconsistent with either the letter or the spirit of the Public Service Commission Law. The liability for the penalty which it imposes for a breach of prescribed duties is not repugnant to the right to graduate rates by liability. The statutory liability, however, is absolute. It cannot be cut down or minimized to conform to a rate; it is up to the telegraph company to adjust the rate to the liability.

Section 10140 provides that telegraph companies "shall be liable for special damages occasioned by the failure or negligence of their operators or servants in receiving, copying, transmitting or delivering dispatches." This statutory liability is not different from, or beyond, that imposed in such cases by the common law. [Adams Express Co. v. Croninger, 226 U. S. 491, 511.] And as already shown the Company's schedule of rates and charges does not limit its liability for negligence; it merely requires an adjustment of the rate to the liability involved, or agreed upon.

The Commission's counsel further suggest that Section 10498, Revised Statutes 1919, is repugnant to the view that telegraph companies have the right to graduate their rates according to the liability assumed. Such repugnancy, however, is not perceivable. The section is a part of the Public Service Commission Law and merely provides that if any telegraph company does any act forbidden by that law, or omits to do any act required by it, such company shall be liable for all loss or damage caused thereby. .

V. The basing of rates and charges for the sending of telegraphic messages in part on the liability assumed, as permitted by the Public Service Commission Law, operates equitably for both the companies and the persons who avail themselves of their service.. While the former are permitted in all cases to exact a sum proportionate to the responsibility undertaken, the latter are furnished the service in the sending of messages which involve but little, if any, pecuniary consequences (the character of the great majority of messages sent) at rates correspondingly adjusted. The important thing in this connection is that the public be fully advised as to the rates and charges in respect to the limitations of liability upon which they rest. For this the law has made ample provision. Section 10497 provides among other things: "Such schedule shall be plainly printed and kept open to public inspection. The Commission shall have the power to prescribe the form of every such schedule and may from time to time prescribe, by order, changes in the form thereof. The Commission shall also have the power to establish rules and regulations for keeping such schedules open to public inspection and may from time to time modify the same."

*Equitable Adjustment.*

If the order of the Commission involved in this proceeding merely prohibited the use of the old message forms, it would be unobjectionable. But as it goes fur-

ther and forbids the use of blanks containing any statement with reference to limitations of liability, although such limitations may in every respect conform to those embraced within the Company's schedule of rates on file'with the Commission, it cannot be sustained.

The judgment of the circuit court is therefore reversed and the order affirmed by it set aside. All concur.