THOMAS G. HARDIE & CO. v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 24 June, 1925.)

**1. Telegraphs—Commerce—Cipher and Obscure Messages—Federal Control—Statutes.**

The regulation as to interstate telegraphic messages has been taken over by an act of Congress and made uniform in certain classifications by the Interstate Commerce Commission, including obscurely worded or written messages, or messages written in cipher, and the decisions of the Supreme Court of the United States as to the measure of liability of a telegraph company in interstate commerce are controlling in the State courts.

**2. Same—Contracts—Torts—Valid Stipulations.**

A telegraphic message written obscurely in cipher is not presumed to be understood by the telegraph company accepting it for transmission and delivery, and under the Federal decisions, upon a message of this character in interstate commerce, there can be no recovery of actual damages when the character or meaning of its contents are not disclosed to the telegraph company handling the same, whether the action be regarded as in contract or tort, as such damages will not be presumed upon the face of the message to have been in contemplation of the parties when the transaction was entered into by them.

**3. Same—Parties—Sender of Message.**

Both the sender and sendee of a telegraphic message are bound by the valid stipulations on an interstate telegram, and the latter may not recover upon a mistake made in the transmission of an obscure or cipher message when the sender may not do so under the Federal decisions and statutes.

APPEAL by defendant from *Stack, J.*, at March Term, 1924, of MECKLENBURG.

Civil action to recover damages for an alleged negligent error in the transmission of the following telegram:

"Terrell, Texas, 1-18-23.

"Thos. G. Hardie & Co., Charlotte, N. C.

"Rivulet offer blurting concern inch group B bluffness on March.

"Ludlam, McGinty & Company."

Translated, this message means: "Your telegram received. Offer 500 middling inch group B 125 on March."

The word "bluffness," meaning 125, was changed in transmission to "bluffing," which has a code meaning of 100.

Upon the strength of this telegram, plaintiff sold to the Monarch Mills, of Union, S. C., 500 bales middling inch cotton at 100 on March, and alleges that it sustained a loss of $663 by reason of the error aforesaid.

This message was written on one of the defendant's regular forms, and contained, *inter alia,* the following stipulations:

1. "To guard against mistakes or delays, the sender of a message should order it repeated—that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated-message rate is charged in addition."

2. "The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any message received for transmission at the unrepeated-message rate beyond the sum of five hundred dollars . . . nor in any case for delays arising from unavoidable interruption in the working of its lines, nor for errors in cipher or obscure messages."

3. "No employee of the company is authorized to vary the foregoing."

These stipulations were on file with and approved by the Interstate Commerce Commission prior to and at the time of sending the above message.

Upon denial of liability and issues joined, the jury returned a verdict in favor of plaintiff for $5.00, it being admitted that the message in question was an unrepeated message. The court ruled that the first part of stipulation No. 2 above was valid and the second clause, in regard to cipher or obscure messages, void.

From the judgment rendered thereon, defendant appeals, assigning errors.

*T. L. Kirkpatrick and H. L. Taylor for plaintiff.*
*Tillett & Guthrie for defendant.*

STACY, C. J. The telegram in question was sent from Terrell, Texas, to the plaintiff at Charlotte, N. C. It is, therefore, a transaction in interstate commerce, and the case is to be decided under the act of Congress, 18 June, 1910, 36 Stat. at L., 539, the pertinent provisions of which are as follows:

"All charges made for any service rendered or to be rendered in the transportation of passengers or property and for the transmission of messages by telegraph, telephone, or cable, as aforesaid, or in connection therewith, shall be just and reasonable; and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful: *Provided,* that messages by telegraph, telephone, or cable, subject to the provisions of this act, may be classified into day, night, repeated, unrepeated, letter, commercial, press, government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages," etc.

The case is governed by the Federal law. *Postal Tel.-Cable Co. v. Warren-Godwin Co.,* 251 U. S., 27; *Johnson v. Tel. Co.,* 175 N. C., 588; *Bateman v. Tel. Co.,* 174 N. C., 97; *Norris v. Tel. Co.,* 174 N. C., 92; *Meadows v. Tel. Co.,* 173 N. C., 240. As said in *Gardner v. W. U. Tel. Co.,* 231 Fed., 405: "Congress has taken possession of the field of interstate commerce by telegraph, and it results that the power of the State to legislate with reference thereto has been suspended." '

Prior to the passage of this act by Congress, many States, including North Carolina, had held that the stipulation limiting the defendant's liability to the cost of the telegram in case of an unrepeated message was one restricting its liability for negligence and, therefore, void, as against public policy. *Young v. Tel. Co.,* 168 N. C., 36; *Rhyne v. Tel. Co.,* 164 N. C., 394; *Williamson v. Tel. Co.,* 151 N. C., 223; *Hendricks v. Tel. Co.,* 126 N. C., 304; *Sherrill v. Tel. Co.,* 116 N. C., 655; *Brown v. Tel. Co.,* 111 N. C., 187, overruling *Lassiter v. Tel. Co.,* 89 N. C., 334; 37 Cyc., 1684.

But since Congress has taken possession of the entire field of commerce, with respect to telegraphs, telephones, and cables of an interstate character, and of messages transmitted from one State to another through the medium of the electric telegraph, we have abandoned our own decisions and followed those of the Supreme Court of the United States, having, as it does, the final authority to interpret and declare the law on the subject. *Meadows v. Tel. Co.,* 173 N. C., 240; *Boone v. Tel. Co.,* 175 N. C., 718; *Askew v. Tel. Co.,* 174 N. C., 261; *Bateman v. Tel. Co., supra; Norris v. Tel. Co., supra; Byers v. Express Co.,* 240 U. S., 612, reversing the same case, 165 N. C., 542.

In *Primrose v. W. U. Tel. Co.,* 154 U. S., 1, the Federal Supreme Court passed upon the validity of a contract made by a telegraph company with the sender of an interstate message by which, in case the message were missent, the liability of the company was limited to a refunding of the price paid for sending it, unless, as a means of guarding against mistake, the repeating of the message for comparison from the office to which it was directed to the office of origin was secured by the payment of an additional sum. It was held that such a contract was not one exempting the company from liability for its negligence, but a reasonable condition appropriately adjusting the charge for the service rendered to the duty and responsibility exacted for its performance. Such a stipulation was, therefore, held to be valid, and the right to recover for error in transmitting a message sent subject to it was accordingly limited to the price paid for sending the telegram. *Postal Tel.-Cable Co. v. Warren-Godwin Co.,* 251 U. S., 27. *Arguendo,* the Court said: "By the regulation now in question, the telegraph company has not undertaken to wholly exempt itself from liability for negligence,

but only to require the sender of the message to have it repeated, and to pay half as much again as the usual price, in order to hold the company liable for mistakes or delay in transmitting or delivering, or for not delivering a message, whether happening by negligence of its servants or otherwise." Likewise, the validity of stipulations limiting liability in case of loss of goods resulting from the default of an interstate carrier has been sustained in a number of decisions. *Adams Ex. Co. v. Croninger,* 226 U. S., 491; *Ch. B. and D. R. Co. v. Miller,* 226 U. S., 517; *Ch. St. Paul M. & O. R. Co. v. Latta,* 226 U. S., 519; *Mo. K. and T. R. Co. v. Harriman,* 227 U. S., 657; *S. A. L. R. Co. v. Pace Mule Co.,* 234 U. S., 751, reversing same case, 160 N. C., 215; *W. U. Tel. Co. v. Dant,* 42 App. D. C., 398; L. R. A., 1915B, 685; Ann. Cas., 1916A, 1132, and note.

It has been held with us that the sendee or receiver of a telegraphic message, as well as the sender, is bound by the valid stipulations of the contract, such as the one prescribing the time for bringing suit for damages and other similar provisions, whether the action is brought in contract or in tort. *Lytle v. Tel. Co.,* 165 N. C., 504; *Penn v. Tel. Co.,* 159 N. C., 306; *Barnes v. Tel. Co.,* 156 N. C., 150; *Forney v. Tel. Co.,* 152 N. C., 494; *Sykes v. Tel. Co.,* 150 N. C., 431; *Lewis v. Tel. Co.,* 117 N. C., 436; *Sherrill v. Tel. Co.,* 109 N. C., 527; *Meadows v. Tel. Co., supra; Norris v. Tel. Co., supra.* Speaking to the question in *Penn v. Tel. Co.,* 159 N. C., p. 314, Hoke, J., said: "These regulations, to the extent that they are reasonable and not in excuse for negligence, have been upheld with us by express decision, and we see no reason why they should not be allowed to prevail, whether the action is in contract or tort. (Citing authorities.) We are aware that there are decisions to the contrary in other jurisdictions, more especially in respect to the addressee of the message, but they are not in accord with the principles established here." See, also, 26 R. C. L., 583.

Thus, in conformity with our own decisions and many others, until the Supreme Court of the United States shall decide otherwise, we are constrained to hold that the valid stipulations relating to interstate messages, and which enter into and form a part of the contract, are binding on both the sender and the sendee.

This, then, brings us to the crucial question as to whether the stipulation exempting the defendant from liability "for errors in cipher or obscure messages" is valid or void. The stipulation has been approved by the Interstate Commerce Commission and it is controlled by the Federal law. *W. U. Tel. Co. v. Czizek,* 264 U. S., 281. Speaking to the subject in *W. U. Tel. Co. v. Esteve Bros. & Co.,* 256 U. S., 566, *Mr. Justice Brandeis,* for the Court, said:

"The lawful rate having been established, the company was by the provisions of sec. 3 of the 'Act to Regulate Commerce' prohibited from granting to any one an undue preference or advantage over the public generally. For, as stated in *Postal·Tel.-Cable Co. v. Warren-Godwin Lumber Co., supra,* 30, the 'act of 1910 was designed to, and did, subject such companies as to their interstate business to the rule of equity and uniformity of rates.' If the general public, upon paying the rate for an unrepeated message, accepted substantially the risk of error involved in transmitting the message, the company could not, without granting an undue preference or advantage, extend different treatment to the plaintiffs here. The limitation of liability was an inherent part of the rate. The company could no more depart from it than it could depart from the amount charged for the service rendered.

"The act of 1910 introduced a new principle into the legal relations of the telegraph companies with their patrons which dominated and modified the principles previously governing them. Before the act the companies had a common-law liability from which they might or might not extricate themselves, according to views of policy prevailing in the several States. Thereafter, for all messages sent in interstate or foreign commerce, the outstanding consideration became that of uniformity and equality of rates. Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not as before, a matter of contract by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed. Assent to the terms of the rate was rendered immaterial, because when the rate is used, dissent is without effect."

If it were an open question we should be disposed to uphold the stipulation in so far as it is in affirmance of the principles announced in *Hadley v. Baxendale,* 9 Exch., 345 (*Cannon v. Tel. Co.,* 100 N. C., 300; *Kennon v. Tel. Co.,* 126 N. C., 232; *Newsome v. Tel. Co.,* 153 N. C., 153; *S. c.,* 144 N. C., 178), and declare it invalid to the extent that it may be in conflict therewith, or to the extent that it may undertake to exempt the defendant from all liability for its negligence. 26 R. C. L., 603. But in *Primrose v. W. U. Tel. Co.,* 154 U. S., 1, the validity of this stipulation has been upheld as against the sender of the message, and it is the ruling with us, as above indicated, that the valid stipulations of such contracts are alike binding on the sender and the sendee. See 26 R. C. L., 576.

Speaking directly to the question, *Mr. Justice Gray,* for the Court, said:

"It is also to be remembered that, by the third condition or restriction in the printed terms forming part of the contract between these

parties, it is stipulated that the company shall not be 'liable in any case' 'for errors in cipher or obscure messages'; and that it is further stipulated that 'no employee of the company is authorized to vary the foregoing,' which evidently includes this, as well as other restrictions.

"It is difficult to see anything unreasonable or against public policy in a stipulation that if the handwriting of a message delivered to the company for transmission is obscure, so as to be read with difficulty, or is in cipher, so that the reader has not the usual assistance of the context in ascertaining particular words, the company will not be responsible for its miscarriage, and that none of its agents shall, by attempting to transmit such a message, make the company responsible. . . .

"But it certainly was a cipher message, and to hold that the acceptance by the defendant's operator at Philadelphia made the company liable for errors in its transmission would not only disregard the express stipulation that no employee of the company could vary the conditions of the contract, but would wholly nullify the condition as to cipher messages, for the fact that any message is written in cipher must be apparent to every reader.

"Beyond this, under any contract to transmit a message by telegraph, as under any other contract, the damages for a breach must be limited to those which may be fairly considered as arising according to the usual course of things from the breach of the very contract in question, or which both parties must reasonably have understood and contemplated when making the contract as likely to result from its breach. This was directly adjudged in *W. U. Tel. Co. v. Hall,* 124 U. S., 444.

"In *Hadley v. Baxendale,* 9 Exch., 345, decided in 1854, ever since considered a leading case on both sides of the Atlantic, and approved and followed by this Court in *W. U. Tel. Co. v. Hall,* above cited, and in *Howard v. Stillwell Co.,* 139 U. S., 199, 206, 207, *Baron Alderson* laid down as the principles by which the jury ought to be guided in estimating the damages arising out of any breach of contract the following: 'Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally—*i.e.,* according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from

the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract.' 9 Exch., 354, 355."

We may also add that the principles announced in *Hadley v. Baxendale* have been firmly established in our own jurisprudence. *Johnson v. R. R.,* 184 N. C., 101; *Fertilizer Works v. Simpson,* 183 N. C., 251; *Furniture Co. v. Express Co.,* 148 N. C., 87; *Williams v. Tel. Co.,* 136 N. C., 82.

Again, to secure a reduction in telegraphic tolls, and not secrecy, is quite often the real inducement for sending cipher messages, especially as the companies are prohibited, in many States by statute, from disclosing the contents of any message entrusted to their care. C. S., 4497, *et seq.* This, in effect, is to obtain a cheaper rate on a given message, and at the same time to render it more difficult for the defendant to perform the service. It is provided in the act of Congress that interstate messages sent by telegraph, telephone, or cable may be divided into such classes as are just and reasonable, and different rates established for the different classes. Cipher messages have been placed in the nonliability class, so far as errors in transmission are concerned, and this has been approved. *Postal Tel.-Cable Co. v. Warren-Godwin Co.,* 251 U. S., 27.

The present action is by the sendee or receiver of an interstate cipher message, intelligible only to the sender and the plaintiff to whom it was addressed, to recover damages for an error in the transmission of said message, and there is nothing on the record to disclose its value or to put the defendant on notice of its worth to the parties, nor is there any evidence of willful misconduct or gross negligence on the part of the defendant. *W. U. Tel. Co. v. Esteve Bros. & Co., supra; Primrose v. Tel. Co., supra; Jones v. Tel. Co.,* 18 Fed., 717; *White v. Tel. Co.,* 5 McCrary, 103; 26 R. C. L., 574; Jones on Tel. & Tel. Companies (2 ed.), sec. 407. It follows, therefore, from what is said above, that the plaintiff is not entitled to recover, and the defendant's motion for judgment as of nonsuit should have been allowed.

Reversed.