SEAWELL. J., concurring in part and dissenting in part.
BARNHILL. J., dissenting.
Civil action to recover damages for alleged negligent failure to deliver a prepaid, unrepeated, intrastate telegram, sent from Elizabethtown, N.C. in words and figures as follows, to wit:
"February 1, 1942
 "Mr. A. P. Russ P. O. Box 402 Lumberton, N.C. "Papa's dead, Burying Eleven Monday. J. A. Russ."
This message was filed with the defendant's agency in Elizabethtown on Sunday morning for transmission by telephone to its Lumberton office when it opened at five o'clock that afternoon. It was so transmitted. The operator sent it out by a messenger boy who was going into the Negro section, across the river, to deliver two telegrams to colored people. The boy asked at two filling stations if they knew Mr. Russ. He soon returned the message to the telegraph office. The operator called the post office and was advised by the clerk that Mr. Russ had a post office box, but the clerk did not know his home address. The husband of the operator was in the telegraph office when the message was received. He advised his wife that he did not know Mr. Russ. At 6:30 p.m. a stamp was placed on the telegram and it was dropped in the mail, and the office was closed.
The plaintiff never received the telegram. He is a white man, 67 years of age, and lived about five blocks from the telegraph office on one of the principal streets of the town. He had been a resident of Lumberton five or six years. He is a member of the Episcopal Church, votes in Lumberton and has a son who attends the Lumberton schools. He was known to the Chief of Police and to the Chief of the Fire Department, both of whom were on duty at their headquarters on that day. The Fire Department is within two blocks of the telegraph office.
The plaintiff did not learn of his brother's death until the following Tuesday, the day after the funeral. He testified to substantial damages.
The jury found that the defendant had negligently failed to deliver the message to the plaintiff, and assessed his damages at $750.00.
From judgment on the verdict, the defendant appeals, assigning errors.
The first question for decision is whether the defendant's demurrer to the evidence or motion for judgment of nonsuit should *Page 506 
have been sustained. The trial court answered in the negative, and we cannot say there was error in the ruling.
I. MENTAL ANGUISH AS BASIS OF RECOVERY.
The law is well settled in this jurisdiction that, in certain cases, substantial damages may be recovered for mental anguish proximately resulting from the wrongful or negligent failure of a telegraph company to transmit correctly and deliver promptly a telegraphic message, independently of any bodily or pecuniary injury. Penn v. Tel. Co.,159 N.C. 306, 75 S.E. 16, 41 L.R.A. (N.S.), 223; Young v. Tel. Co.,107 N.C. 370, 11 S.E. 1044, 22 Am. St. Rep., 883, 9 L.R.A., 669; 26 R. C. L., 606. Here, the sendee or addressee of the message brings the action, and alleges negligence in its delivery with resultant mental anguish. He is permitted to maintain the suit under our decisions.Penn v. Tel. Co., supra.
The plaintiff made out a prima facie case when he showed acceptance of the message by the telegraph company for delivery and failure to deliver it with reasonable diligence. Hoaglin v. Tel. Co., 161 N.C. 390,77 S.E. 417; Medlin v. Tel. Co., 169 N.C. 495, 86 S.E. 366. The duty of explanation then shifted to the defendant, if it did not care to risk the chance of an adverse verdict. Hendricks v. Tel. Co., 126 N.C. 304,35 S.E. 543; McDaniel v. R. R., 190 N.C. 474, 130 S.E. 208.
"Proof or admission that the company received a message for transmission and failed to deliver it to the sendee within a reasonable time, raises aprima facie case of negligence and imposes upon the defendant the burden of alleging and proving such facts as it may rely on in excuse." Cogdell v.Tel. Co., 135 N.C. 431, 47 S.E. 490.
Whether the defendant had exercised due diligence in the instant case was for the jury. Medlin v. Tel. Co., supra. The telegram on its face showed that it was a death message. It was received in Lumberton at 5:00 o'clock on Sunday afternoon. The purpose of the message was to inform the sendee not only of his brother's death, but also of the hour of the funeral, "Eleven Monday." We cannot say as a matter of law that mailing the telegram was a sufficient compliance with the defendant's duty under the circumstances disclosed by the record. Kivett v. Tel. Co., 156 N.C. 296,72 S.E. 388; Hendricks v. Tel. Co., supra; Western U. Tel. Co. v.Broesche, 72 Tex. 654, 13 Am. St. Rep., 843.
It is true, in Lefler v. Tel. Co., 131 N.C. 355, 42 S.E. 819, it was said that where a telegram is addressed to a person in care of a corporation, in that case "So. Railway Co.," delivery to an agent of the corporation would suffice to discharge the duty of the telegraph company. And there is authority for the holding that where a telegraph company receives a message addressed to a person at a designated post office box, it *Page 507 
performs its contract when it places the message in an envelope, correctly addressed, in the mail at the post office within a reasonable time. Taylorv. Tel. Co., 136 Ky. 1, 123 S.W. 311; 62 C. J., 168. But this position would seem to be discordant with the authorities in this jurisdiction.Kivett v. Tel. Co., supra; Hendricks v. Tel. Co., supra; Hoaglin v. Tel.Co., supra; Green v. Tel. Co., 136 N.C. 489, 49 S.E. 165, 67 L.R.A., 985, 103 Am. St. Rep., 955.
In the instant case, the direction was to deliver the message to A. P. Russ, not to a post office box, an inanimate receiver. Western Union Tel.Co. v. Scarborough (Tex.Civ.App.), 44 S.W.2d 751; Western Union Tel.Co. v. Freeland (Tex.Civ.App.), 12 S.W.2d 256. Nor is the case controlled by the decision in Lefler v. Tel. Co., supra. There, the message was sent in care of an agent who presumably would be in position to care for it or to see that it was delivered to the sendee. Here, it was apparent that by mailing the telegram late Sunday afternoon, in all probability, the sendee would not receive it in time to attend the funeral the following morning. Moreover, the sending of the telegram, rather than resorting to the postal system, was enough to indicate its importance, and the necessity of delivering it promptly. Gibbs v. Tel. Co., 196 N.C. 516,146 S.E. 209. In all likelihood, if the sender had known the message was to be mailed in Lumberton, he would have dispatched a letter rather than a telegram. "A prompt delivery was of the essence of the contract." Western U. Tel. Co. v. Adams, 75 Tex. 531, 12 S.W. 857, 16 Am. St. Rep., 920, 6 L.R.A., 844.
The conclusion is reached "upon consideration of all the evidence," C. S., 567, that the case was properly submitted to the jury for a determination of the issues raised by the pleadings.
II. LIMITATION OF LIABILITY.
In the alternative, or failing in its motion for judgment of nonsuit, the defendant presents the question of its limited liability. This was reserved upon the hearing, and by consent, ruled upon as a matter of law. The trial court denied the defendant's claim of limited liability, and entered judgment on the verdict.
The telegram in question was written on one of defendant's regular forms, which had printed upon it, inter alia, the following stipulations:
1. "All messages are accepted for transmission subject to the classifications hereinafter set forth, and to the conditions and stipulations adopted for each of the respective classifications. . . .
2. "Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, in consideration whereof it is agreed . . . The Telegraph Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received *Page 508 
for transmission at the unrepeated rate beyond the sum of Five Hundred Dollars," etc.
These provisions, stipulations and conditions had theretofore been inserted in the defendant's "Tariff N. Car. U. C. No. 1, Schedule A-1," and approved by the North Carolina Utilities Commission, 15 September, 1941.
It is provided by C. S., 1066, that the Corporation Commission (now its successor, the Utilities Commission, ch. 134, Public Laws 1933) "shall make reasonable and just rates and charges, in intrastate traffic, and regulate the same, of and for . . . 2. The transmission and delivery of messages by any telegraph company." It is also provided, C. S., 1067, that "the rates or charges established by the Commission shall be deemed just and reasonable, and any rate or charge . . . other than those so established, shall be deemed unjust and unreasonable."
It is further provided by ch. 307, Public Laws 1933, that the term "rate" shall mean and include "every compensation, charge . . . and classification, or any of them, demanded, observed, charged or collected by any public utility, for any service . . . offered by it to the public, and any rules, regulations . . . affecting any such compensation . . . or classification." And then in section 4, "every public utility shall file with the commission . . . schedules showing all rates established by it," etc. And finally, in section 5, "No public utility shall . . . collect or receive from any person a greater or less compensation for any service rendered . . . than that prescribed in the schedules . . . then filed in the manner provided in this act, nor shall any person receive or accept any service from a public utility for a compensation greater or less than that prescribed in such schedules."
It is the contention of the defendant that the effect of this legislation on the business of telegraph companies is to place the approved intrastate tariff regulations on a parity with the approved interstate tariff regulations so far as the respective rates and limitations of liability are concerned. Hardie v. Tel Co., 190 N.C. 45, 128 S.E. 500. It is conceded that if the message in question were an interstate message the stipulation would be valid under an amendment to the "Act to Regulate Commerce" adopted by Congress on 18 June, 1910. 36 At L., 539; WesternUnion v. Esteve Bros. Co., 256 U.S. 566; Western Union v. Nester,309 U.S. 582; Meadows v. Tel. Co., 173 N.C. 240,91 S.E. 1009.
In the enactment of the above legislation, the General Assembly undoubtedly had in mind the establishment of uniform service by public utilities, and likewise the establishment of uniform rates for such service within the prescribed classifications. The classification is made a part of the rate, and the approval of the tariff schedule makes it the legal *Page 509 
standard, which the parties may not vary or change by agreement. The rate then becomes a matter of law rather than one of contract. The parties agree with respect to the transmission and delivery of the telegram and its classification. The rate is fixed by the approved uniform tariff schedule. Assent to the rate is rendered immaterial because when the rate is used, dissent is without effect. Ita lex scripta est. The classification is a part of the rate; likewise, the limitation of liability. "Such limitations are inherent parts of the rates themselves." State ex rel. Western Union v.Public Service Com., 304 Mo., 505, 264 S.W. 669, 35 A.L.R., 328.
If uniformity is to prevail, the tariff schedule must represent the whole duty and the whole liability of the company rendering the service.Knight v. Coach Co., 201 N.C. 261, 159 S.E. 311. Thus, the company is not contracting against its negligence. The law fixes the rate to be paid and the extent of the liability to be assumed. Neither party is allowed to depart from this standard of duty and measure of liability. The two are component parts of an integrated whole. The one is as sacrosanct as the other. The "rate" as the term is used in the statute with all that it implies, is withdrawn from the field of agreement. The approved tariff schedule is not subject to modification or change by the parties. It contains both the legal standard and the limitation of liability. Annotation, 35 A.L.R., 336.
Negligence is a breach of some duty imposed by law, which ordinarily entitles the injured party to recover all damages proximately resulting therefrom. Clark v. Traction Co., 138 N.C. 77, 50 S.E. 518, 107 Am. St. Rep., 526; 15 Am. Jur., 593. But when the law prescribes a duty with a limitation of liability appendant, the injured party must take the law as he finds it, and measure his rights accordingly. Lytle v. Tel. Co.,165 N.C. 504, 81 S.E. 759. This is the basis of the decision in Knight v.Coach Co., supra.
Our attention has been directed to the decisions in Young v. Tel. Co.,168 N.C. 36, 84 S.E. 45; Brown v. Tel. Co., 111 N.C. 187,16 S.E. 179, and the dictum in Hardie v. Tel. Co., supra. It is enough to say these cases were before ch. 307, Public Laws 1933, providing for equality in service and uniformity in the rates to be charged or collected by public utilities.
It follows, therefore, from what is said above, the plaintiff's recovery should have been limited to $500.00. Judgment accordingly.
The defendant will be taxed with the cost of the record and its brief.
Modified and affirmed.